No. 49,503

CARL H. GARRISON and EDITH L. GARRISON, *Appellees,* v. CHANDLER PRICE BERRYMAN and DOROTHY BERRYMAN, *Appellants.*

(594 P.2d 159)

Opinion filed May 5, 1979.

*T. Richard Liebert,* of Liebert & Liebert, of Coffeyville, argued the cause and was on the brief for the appellants.

*Robert L. Eastman* and *Morris D. Hildreth,* of Becker, Hildreth, Eastman & Gossard, of Coffeyville, argued the cause and *Robert L. Eastman* was on the brief for the appellees.

The opinion of the court was delivered by

MCFARLAND, J.: This is an appeal from a judgment rescinding a real estate transaction on the ground of mutual mistake. The purchasers are plaintiffs Carl H. and Edith L. Garrison. The sellers are defendants Chandler Price Berryman and Dorothy Berryman. Defendants appeal from the judgment rescinding the transaction and returning plaintiffs' purchase price of $6,000, plus interest.

The facts are rather complex and by virtue of the issues raised they must be set forth in some detail. The parties actively involved in the factual situation are Carl H. Garrison and Chandler Price Berryman and, for simplicity, we will refer to them as plaintiff and defendant, respectively. The real estate in question is situated in Coffeyville, Kansas. In approximately 1955, defendant purchased a tract of land which included what ultimately became Lot 5. Sycamore Creek runs through the tract and at the time of defendant's purchase of the land he received a topographical map of the area showing the high water mark to be 730 feet. Defendant built his residence on what became Lot 6 of the tract and was residing in that home at all times relevant to his dealings with plaintiff. Defendant is a former chairman of the planning and zoning commission of the City of Coffeyville.

In December of 1971 the City of Coffeyville adopted Ordinance No. G-127, providing a method for determining floodways

and floodplains and establishing permitted usages within such floodways and floodplains. Structures for human habitation were not to be permitted in floodways. In April of 1973 the Army Corps of Engineers completed its flood insurance study for the City of Coffeyville. In the fall of 1974 the city held hearings relative to the flood insurance study. Defendant did not attend any of these meetings, but was aware they had occurred. In December of 1974 defendant talked to Ron Stevenson, floodplain administrator and assistant city engineer, at Stevenson's office. At that time the topic of conversation was the Corps study and the final map to be prepared therefrom by the city engineer's office. It was anticipated that the final map would be prepared in early 1975. Defendant was concerned over the fact the study placed some lots he owned (including Lot 5, at issue herein) partially in the floodway and floodplain. Defendant disputed that the lots were subject to flooding. Stevenson advised defendant that the map was still subject to finalization. Defendant had no further conversations with Stevenson concerning Lot 5. On February 12, 1975, the city enacted Ordinance No. G-75-01, which directed that the official floodplain zoning map be prepared from the study.

In January of 1976 plaintiff contacted defendant about the purchase of Lot 5, the lot immediately north of defendant's residence (both lots being situated in the Berryman and Schmid Addition). Plaintiff and defendant conferred on the lot site concerning its purchase. Plaintiff advised defendant the intended use of the property was as a residence for his family. The parties negotiated on the purchase of the lot on two or three other occasions. As there had been some general publicity on the flood study, plaintiff asked defendant about possible flood problems. Defendant advised plaintiff that he had been personally familiar with the lot for more than fifty years and that the lot had never been flooded. Defendant produced the old topographical map, which indicated Lot 5 was above the critical 730-foot high water mark. The asking price for the lot was $7,000. The parties ultimately agreed on a purchase price of $6,000 with a condition that plaintiff would buy the materials for the construction of his home from defendant's lumber yard or else pay $1,000 in liquidated damages. In the alternative, if construction of the home did not commence before January 1, 1978, the damages would also be due. On February 17, 1976, the parties signed an agreement

which incorporated these provisions. On March 2, 1976, plaintiff paid defendant the $6,000 and received the abstract and deed to Lot 5. On March 10, 1976, the final map was accepted and adopted by the City of Coffeyville.

In April of 1976, plaintiff contacted Stevenson about what procedure was necessary for acquisition of a building permit. Plaintiff had with him a sketch of the house he desired to build. He was then advised that over half his lot was in the floodway and that no home could be built on that portion. He was further advised that the balance of his lot was in the floodplain and that any home on this portion of the lot could have no basement, would require a fill to raise the elevation and that, due to setback provisions, only a home smaller in size than his sketched home could be built. Plaintiff then requested that defendant return his money and the request was denied. This action resulted and the district court found defendant knew or should have known of the floodway-floodplain problem, and granted rescission on the ground of mutual mistake. Defendant appeals.

Several issues are raised on appeal. Defendant contends rescission was an improper remedy. He relies on *Lohmeyer v. Bower*, 170 Kan. 442, 227 P.2d 102 (1951), wherein this court held:

"Municipal ordinances relating to the use of land or the location and character of buildings that may be located thereon in existence at the time of the execution of a contract for the purchase of real estate are not such encumbrances or burdens on title as may be availed of by a vendee to avoid the agreement on the ground they render his title unmarketable." Syl. ¶ 1.

*Lohmeyer* is readily distinguishable, as the agreement therein was sought to be avoided on the ground of unmarketable title. In the case before us the ground on which rescission was sought is mutual mistake.

General rules on the nature of rescission are set forth in *Dreiling v. Home State Life Ins. Co.*, 213 Kan. 137, Syl. ¶¶ 4-6, 515 P.2d 757 (1973) (rescission of life insurance contract):

"Rescission of a contract is the annulling or abrogation or unmaking of the contract and the placing of the parties to it in status quo. It necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it.

"Rescission is an equitable remedy designed to afford relief from contracts entered into through mistake, fraud, or duress. Ordinarily, the nature of relief asked in such cases must be such as to place the parties in their original situation.

"The general rule is that one who seeks to rescind a contract, or to have equity rescind it, must place the other party in substantially the same condition he was in when the contract was executed, but there are a number of exceptions to the rule."

See *Whiteley v. O'Dell,* 219 Kan. 314, 319, 548 P.2d 798 (1976) (rescission based on breach of contract for failure to build a house to certain specifications).

In *Dover Pool & Racquet Club, Inc. v. Brooking,* 366 Mass. 629, 322 N.E.2d 168 (1975), the parties entered into a written contract for sale of land. Unknown to the parties was a recent proposed zoning amendment that would have retroactive effect. The purchaser desired to use the land for a nonprofit club. The zoning ordinance would require a special permit for such use. The court said:

"Thus at the time the contract was made both parties made the assumption that the zoning by-laws interposed no obstacle to 'the use of the premises for a nonprofit tennis and swim club. That assumption was mistaken, and we think it was a basic assumption on which the contract was made. It could not yet be said that the purchaser's principal purpose had been frustrated. Cf. Restatement 2d: Contracts (Tent. draft No. 9, April 8, 1974), § 286 (2), and illustration 6. But a right of vital importance to the purchaser did not exist, and as a result of the mistake enforcement of the contract would be materially more onerous to the purchaser than it would have been had the facts been as the parties believed them to be. The contract was therefore voidable by the purchaser unless it bore the risk of the mistake. The agreement does not provide for that risk, and the case is not one of conscious ignorance or deliberate risk-taking on the purchaser's part. Nor do we think there is any common understanding that purchasers take the risk of the unusual predicament in which the purchaser found itself. We therefore agree with the judge's conclusion that the contract was voidable for mutual mistake of fact." 366 Mass. at 633-34.

In *Millman v. Swan,* 141 Va. 312, 127 S.E. 166 (1925), both parties mistakenly assumed the property was outside city fire limits and therefore had no restrictions on type of building. The buyer sought specific performance with abatement of price. This the court denied, holding there was mutual mistake of fact and that both parties had equal access to the ordinance. It held there was no deficiency in title justifying abatement, but the buyer could have the contract rescinded at its option.

Rescission on the ground of mutual mistake was an appropriate remedy herein. Both parties knew the land was sold for the purpose of constructing a home and that fact is borne out by the inclusion of the building materials/liquidated damages provisions in the agreement. Defendant objects to the admission of the

agreement and parol evidence of the negotiations. This point is without merit as such evidence is admissible when mutual mistake is claimed. *Stapleton v. Hartman,* 174 Kan. 468, 471, 257 P.2d 113 (1953); *Fontron v. Kruse,* 103 Kan. 32, 38, 172 Pac. 1007 (1918); see *Griesa v. Thomas,* 99 Kan. 335, Syl. ¶ 4, 161 Pac. 670 (1916). The district court held defendant knew or should have known of the floodway-floodplain restrictions and prohibitions, but stopped short of finding fraud on the part of defendant. Instead, the court found mutual mistake, rescinded the transaction, and placed the parties in status quo. Substantial competent evidence exists for the finding of mutual mistake and it will not be disturbed on appeal.

Defendant next urges rescission should not have been granted as plaintiff accepted the statements of Stevenson, floodplain administrator and assistant city engineer, and did not formally proceed to attempt to secure a building permit. Defendant, on cross-examination of Stevenson, elicited testimony that the map adopted by the city was based on the Corps survey and was not the result of an independent survey. Stevenson admitted the map might not be precisely accurate as to where the floodway line was on Lot 5. Defendant produced no evidence as to where the line should properly be drawn. Apparently, neither party had an independent survey made. The ordinance prohibited the construction of structures for human habitation within the floodway and placed restrictions on structures in the floodplain. Stevenson, by ordinance, was the person who had charge of building permits in both the floodway and floodplain. The law does not require a person to do a vain and useless act. Plaintiff was not required, under the facts herein, to "fight city hall," in what would appear to be a losing battle. There is nothing preventing defendant from "picking up the banner" and seeking to change the floodway designation on Lot 5.

Numerous other points raised on appeal need not be determined by virtue of the results previously reached herein.

The judgment is affirmed.