(129 P.3d 624)

No. 93,936

BRADLEY A. BERGMAN and ELIZABETH R. BERGMAN, *Appellants,* v. COMMERCE TRUST COMPANY, N.A., AND MARY RICHARDSON, *Appellees.*

Opinion filed March 10, 2006.

*Bruce F. Landeck*, of Overland Park, for appellants.

*Leonard Rose* and *Amy Allen*, of Lathrop & Gage L.C., of Kansas City, Missouri, for appellees.

Before GREEN, P.J., MCANANY, J., and BRAZIL, S.J.

GREEN, J.: This is a summary judgment case involving whether certain express conditions precedent had been fulfilled. These conditions precedent qualified Bradley and Elizabeth Bergmans' right of first refusal to purchase a 10-acre tract from Crispan Richardson, now deceased. Both sides moved for summary judgment. Mary Richardson and Commerce Trust Company, N.A. (Commerce), Crispan Richardson's successor in interest, sought judgment in the action on grounds that the qualifying conditions precedent had never occurred. The Bergmans sought a ruling that the right of first refusal had been triggered. Determining that the conditions qualifying the Bergmans' right of first refusal had never been fulfilled, the trial court granted Commerce and Mary's motion for summary judgment and denied the Bergmans' motion.

We determine that two separate conditions precedent would have had to occur before triggering the Bergmans' right of first refusal: (1) Richardson or Commerce would have had to form a specific intent to sell, transfer, or convey the 10-acre tract; and (2) Richardson or Commerce would have had to receive a bona fide written offer for the purchase of the 10-acre tract that Richardson or Commerce would have accepted. Because the Bergmans have failed to show that these conditions precedent were satisfied, the Bergmans' right of first refusal never ripened into an enforceable right to purchase the property. Accordingly, we affirm.

In June 1995, Crispan Richardson and the Bergmans executed the Declaration of Restrictions and Reservations (Declaration) which granted both parties the right of first refusal on specified adjacent properties owned by each of the parties. The Declaration stated in part that Richardson would not "sell, transfer or convey"

the 10 acres in dispute "to any third party without first offering the same to [the] Bergman[s], or to the survivor of them, on the same terms and conditions as any bona fide written offer which Richardson has received for the purchase of such property." Interestingly, paragraph 3(e) of the right of first refusal indicated that an offer did not constitute a bona fide written offer unless the Bergmans could match the terms and conditions of such offer. The Declaration was filed with the Johnson County Register of Deeds in June 1995.

In August 2001, Richardson executed a will and trust leaving all of his personal property and real property, including the 10 acres in dispute, to Christa Park. Park is not a party to this action. In September 2001, Richardson executed a deed conveying certain real estate, including the 10 acres in dispute, to the trust. The deed was not recorded. Richardson died several days later, and Commerce was appointed special administrator of Richardson's estate.

Mary Richardson, the decedent's sister, contested the will, claiming that Crispan Richardson did not have the mental capacity to execute the will, trust, and deed. Mary, Commerce, and Park later entered into a settlement agreement which was approved as part of the probate/estate matter. Under the settlement agreement, Commerce transferred certain real estate, including the disputed 10 acres, to Mary by a Kansas Special Administrator's Deed of Distribution. This transfer was made in December 2003.

In April 2003, before the deed of distribution was executed and delivered, Bradley Bergman made a written offer to Commerce to purchase the disputed 10 acres for $106,000. In September 2003, Patrick Smith wrote to Commerce and offered $106,000 for the disputed 10 acres. Commerce responded to Smith in a written letter, stating: "Please be advised that Commerce Bank does not view your letter as a bona fide, serious offer to purchase the property identified therein. Further, Commerce Bank would not be interested in pursuing a sale at the price suggested in your letter. Accordingly, your letter will be disregarded."

The Bergmans sued Commerce and Mary, and the parties later both moved for summary judgment. The parties stipulated that Crispan Richardson's mental competency to execute the instru-

ments was not at issue for purposes of the summary judgment motions. Moreover, the parties stipulated that the only issue was whether the Bergmans' right of first refusal had been triggered.

The Bergmans argued that Bradley's April 2003 offer, the Smith offer, and the transfer and conveyance by Commerce to Mary triggered their right of first refusal in the subject property. On the other hand, Commerce and Mary contended that none of these events triggered the right of first refusal. Commerce and Mary asserted that Crispan Richardson and the Bergmans intended that the right of first refusal would only be triggered upon an intended sale based on a bona fide written offer from a third party.

Determining that the transfer made by Commerce to Mary was not based on a bona fide written offer, the trial court granted Commerce and Mary's motion for summary judgment and denied the Bergmans' motion for summary judgment.

On appeal, the Bergmans maintain that the trial court erroneously interpreted the plain language in the Declaration and disregarded the parties' intent in signing the Declaration. Because the summary judgment motions were decided on stipulated facts, our review of the trial court's decisions is de novo. See *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004).

Moreover, when construing the right of first refusal provisions contained in the Declaration, we exercise a de novo standard of review. See *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 920, 46 P.3d 1120 (2002). When construing this written instrument, we bear in mind the following rules:

"An interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. [Citation omitted.]" *Johnson County Bank v. Ross*, 28 Kan. App. 2d 8, 10-11, 13 P.3d 351 (2000).

We turn now to paragraph 1 of the right of first refusal set forth in the Declaration. The relevant language stated:

"1. Richardson will not sell, transfer or convey
the west one-half of the south one-half of the southwest quarter of Section 30, Township 14, Range 25, in Johnson County, Kansas, which property, together

with the property described in paragraph 2 hereof is referred to herein as 'The Property,'
to any third party without first offering the same to [the] Bergman[s], or to the survivor of them, on the same terms and conditions as any bona fide written offer which Richardson has received for the purchase of such property."

The language of the Declaration leaves no doubt that at least two separate conditions precedent must be satisfied before the Bergmans' right of first refusal would have ripened into a present enforceable contract right.

First, Commerce and Mary maintain that Commerce's desire to sell the property is a condition precedent to the Bergmans' right of first refusal. Commerce and Mary are essentially arguing that a willing seller is an "implied in fact" condition to the Bergmans' right of first refusal. "Implied in fact conditions are similar in their nature to express conditions, except that the parties have expressed their intentions not in words but in the nature of their undertakings." 15 Williston on Contracts § 48:1 (4th ed. 2000); see Restatement (Second) of Contracts §226(c) (1979).

Although not cited by either party, our Supreme Court's decision in *Anderson v. Armour & Company*, 205 Kan. 801, 473 P.2d 84 (1970), offers guidance on whether a preemptive right is conditioned upon a willing seller. In *Anderson*, the Andersons entered into a lease agreement in which they leased property from Armour. A provision of the lease agreement stated that in the event Armour desired to sell the premises, Armour would notify the Andersons in writing of its intention and of the purchase price and would allow the Andersons 15 days in which to attempt to negotiate a purchase and sale contract with Armour. Without first notifying the Andersons, Armour conveyed by warranty deed the property that was being leased to the Andersons to Iowa Beef Packers, Inc. The Andersons sued Armour and received a favorable jury verdict. Armour appealed, arguing that the lease provision was unenforceable.

On appeal, our Supreme Court determined that the provision in question gave the Andersons a preemptive right of purchase which ripened into an enforceable right to purchase when Armour decided to sell. In making this determination, our Supreme Court cited *Weintz v. Bumgarner*, 150 Mont. 306, Syl. ¶¶ 2-3, 434 P.2d

712 (1967), where the Montana Supreme Court set forth the difference between a purchase option and a preemptive right:

" 'A pre-emption differs from an option in that a pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell, but merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption at the stipulated price, and upon receiving such an offer, the pre-emptioner may elect whether he will buy, and if he elects not to buy, then owner of the property may sell to anyone.

" 'Under a lease giving tenant a pre-emptive right of purchase, at such time as the owner forms a specific intention to sell such right ripens into a present enforceable contract right of the tenant to purchase.' " *Anderson,* 205 Kan. at 805.

The preemptive right set forth in *Anderson* is similar to the Bergmans' right of first refusal in the instant case. Although the right of first refusal does not actually state that Richardson must have formed a specific intent to sell the 10-acre tract, the terms of the Declaration indicate that the parties intended to qualify their promises. For example, it would be absurd to find that an owner unwilling to sell his or her property could nevertheless be forced to sell under the terms of a preemptive right because he or she received a bona fide offer for the property. As discussed in *Anderson*, a preemptive right " 'merely requires the owner, *when and if [the owner] decides to sell,* to offer the property first to the person entitled to the pre-emption, at the stipulated price.' " (Emphasis added.) 205 Kan. at 805.

Conditions implied in fact are those which are "necessarily inherent in the actual performance of the contract." 13 Williston on Contracts § 38:11, p. 421 (4th ed. 2000). We determine that under the terms of the Declaration, Richardson or Commerce would not have triggered a right of first refusal in the Bergmans until Richardson or Commerce had formed a specific intent to sell the 10-acre tract.

Second, Richardson's promise to sell the property to the Bergmans "on the same terms and conditions as any bona fide written offer which Richardson has received for the purchase of such property" was a condition qualifying his promise to the Bergmans. These words constituted a condition precedent. This condition required an external event: Richardson or Commerce receiving a

bona fide written offer to purchase the 10-acre tract. The quoted language was intended to make satisfaction of this condition a prerequisite to the Bergmans' right of first refusal coming into legal existence.

Moreover, in explaining that a preemptive right is not triggered until the conditions are met, this court in *Miller v. Alexander*, 13 Kan. App. 2d 543, 552, 775 P.2d 198, *rev. denied* 245 Kan. 785 (1989), stated that "when the conditions are met for the exercise of a preemptive right, that right becomes, in effect, an option."

The Bergmans, however, assert that their April 2003 offer for $106,000 and the Smith offer for $106,000 triggered their right of first refusal on the disputed property. We do not agree that these offers constituted bona fide written offers under the Declaration. As pointed out by Commerce and Mary, the record indicates that Smith was the Bergmans' long-time friend; that he wrote the letter as a favor to the Bergmans; that he did not expect to keep the property; and that he expected to be reimbursed for the property if his offer was accepted. Nevertheless, it is unnecessary to address the Bergmans' argument concerning these offers any further because there is no evidence in the record that Commerce was willing to sell the property or willing to sell it for $106,000. Without the occurrence of these conditions precedent, the Bergmans' right of first refusal could not have ripened into a present enforceable contract right.

Finally, the Bergmans contend that the transfer and conveyance of the disputed property from Commerce to Mary triggered their right of first refusal under the Declaration. On the other hand, Commerce and Mary argue that this was not the type of transfer and conveyance contemplated by the right of first refusal under the Declaration. Commerce and Mary point out that there was no element consistent with the right of first refusal, that is, there was no bona fide written offer, no third party, and no terms and conditions to match.

We agree with Commerce and Mary's argument. Simply stated, the transfer of property from Commerce to Mary did not trigger the Bergmans' right of first refusal because the conditions precedent had not occurred. There was no bona fide written offer and

consequently no evidence that Commerce was willing to accept the offer. Therefore, the Bergmans' argument fails.

Based on the above analysis, we determine that the Bergmans' right of first refusal could only be exercised after the occurrence of two conditions precedent: (1) a showing that Commerce was willing to sell the property and (2) a receipt by Commerce of a bona fide written offer to purchase the property that Commerce was willing to accept. Because these conditions were never fulfilled, the Bergmans' right of first refusal never came into existence.

We find that the trial court's denial of the Bergmans' motion for summary judgment and that its grant of summary judgment to Commerce and Mary Richardson were proper.

Affirmed.

MCANANY, J., concurring: I concur in our ultimate destination: affirming the district court's summary judgment rulings. However, I would take a somewhat different path to get there.

The seed of this dispute is the only slightly murky language of the right of first refusal. Rather than containing the more commonly drafted provision that the grantor of the right will not sell the property to a third party without first offering the property to the grantee of the right on the same terms and conditions as the grantor is willing to accept from the third party, this right of first refusal simply provides:

"Richardson will not sell, transfer or convey [the property] to any third party without first offering the same to [the] Bergman[s] . . . on the same terms and conditions as any bona fide written offer which Richardson has received for the purchase of such property."

The Bergmans argue that this provision on its face does not condition the exercise of the right on the acceptability to the grantor of a third party's offer. The majority's analysis seems to accept that there is a void in the terms of the grant and fills that void with a condition implied in fact. I do not think such an analysis is necessary.

The Bergmans' interpretation is, of course, contrary to the fundamental concept of a preemptive right or right of first refusal. They ignore the opening phrase of the grant: "Richardson will not

sell . . . to any third party . . . ." The fact that this right of first
refusal can be exercised to preempt a sale to a third party makes
it clear that the terms of the third party's offer must be acceptable
to the grantor, otherwise no such anticipated sale would occur.
Further, the very next sentence of the document provides:

> "Notification of an impending sale and the availability of the right of first refusal
> which either party has granted to the other shall be made, implemented and
> exercised according to the following terms and conditions."

Obviously, the reference to "an impending sale" makes it clear that
the offer of the third party must be one that the grantor was willing
to accept. Without such a willingness, there would be no impend-
ing sale. Thus, it seems to me that the case turns on a simple,
straight-forward construction of the grant without the need to im-
ply any additional terms.

Applying this construction of the right of first refusal to the facts
at hand, the offers to purchase from Bergman and Smith clearly
do not trigger the preemptive right. Aside from the obviously ill-
conceived and transparent bootstrap maneuver of Bergman in his
attempt to trigger his preemptive right by his own purchase offer,
I do not question whether these were bona fide offers in the sense
that I do not doubt that the offerors were willing to come to the
closing with certified funds in hand. Nevertheless, the simple fact
is that neither the Bergman offer nor the Smith offer was accept-
able to Commerce.

Finally, the majority upholds Commerce's conveyance to Mary
Richardson by concluding that there was no written offer and, thus,
no willingness of Commerce to accept an offer. I would hold oth-
erwise.

Crispan Richardson was single and had no children. His natural
heirs were his sisters, Mary Bradley and Mary Richardson. Shortly
before his death, he executed a will that left his tangible personal
property to his friend, Christa Park, and transferred the remainder
of his property to a newly created inter vivos trust for Park's benefit.
Crispan's sisters were left nothing under the will and trust. Mary
Richardson challenged her late brother's mental capacity and his
freedom from undue influence at the time he executed the will

and trust agreement. She objected to the admission of the will to probate and filed suit to set aside the trust. After various negotiations, Commerce, as special administrator of the estate and trustee of the trust, entered into a valid settlement agreement pursuant to which Mary Richardson received the real estate that was subject to the right of first refusal. In consideration, she withdrew her challenge to her brother's will and agreed to dismiss her suit attacking the trust.

The valid settlement agreement memorializes in writing the product of the negotiations between Mary Richardson and Commerce that led to the conveyance of the land to her. That conveyance was based upon consideration that only Mary Richardson could supply. By its very terms, the valid settlement agreement was based upon terms that the Bergmans could not possibly meet. Only Mary Richardson could release her claims against the admission of her brother's will to probate and voluntarily dismiss her suit challenging the trust. Under these circumstances, any tender to the Bergmans of Mary Richardson's offer to Commerce would have been a futile gesture. The law does not require a person to do a futile act. See *Garrison v. Berryman*, 225 Kan. 644, 648, 594 P.2d 159 (1979); *Furst v. Buss*, 104 Kan. 245, 248, 178 Pac. 411 (1919). Commerce's conveyance to Mary Richardson was proper, though the property now in her hands remains subject to the Bergmans' right of first refusal should she elect to sell the property before expiration of the right of first refusal.