(204 P.3d 671)

No. 98,646

RUCKER PROPERTIES, L.L.C., A KANSAS LIMITED LIABILITY COMPANY, *Appellant*, v. JANET S. FRIDAY AND JOHN W. FRIDAY, *et al.*, *Appellees*.

Opinion filed April 10, 2009.

Stephen M. Kerwick and Shannon D. Wead, of Foulston Siefkin, LLP, of Wichita, for appellant.

Bryan K. Joy, of Joy Law Office P.A., of Burlington, for appellee.

Before GREENE, P.J., GREEN and LEBEN, JJ.

LEBEN, J.: Rucker Properties, L.L.C., sued Janet and John Friday and their relatives to quiet title to a tract of land in Greenwood County and to enforce a right of first refusal to buy the land. The Fridays filed a cross-claim that sought title to a disputed portion of land that they claimed they own through adverse possession. The district court held a bench trial and found in favor of the Fridays on all issues. Rucker Properties now appeals that ruling.

Rucker Properties argues that the district court erred in not enforcing the right of first refusal in the lease agreement between it and the Fridays. But the right of first refusal in this case was only implicated if the lessors under the lease—the Fridays and their family members—wanted to sell the property. Here, the transfer in question was a quitclaim deed executed as a gift by family members in favor of specific members of that family. As no sale existed, it did not trigger the right of first refusal.

Rucker Properties also argues that the district court erred in finding that the Fridays had acquired the disputed piece of land through adverse possession. But whether a party has acquired land through adverse possession is a question of fact, and substantial evidence supported the district court's conclusion that the Fridays had possessed the disputed land openly, exclusively, and continuously under a good-faith belief in ownership for more than 30 years. Rucker Properties' arguments that the district court's decision on this issue cut off the only suitable access to its property does not defeat the adverse-possession claim, and Rucker Properties made no claim in the district court for any sort of implied easement across the Fridays' land. Thus, we affirm the district court's judgment in favor of the Fridays.

The district court prepared an exceptionally thorough 18-page decision. It summarized the key evidence and its findings, and it included helpful maps and photos showing the disputed land. Because the parties are familiar with the evidence and the district court's decision set it out so clearly, we will only summarize some of the key points related to the appeal.

As referenced in the district court's opinion and the parties' exhibits, three separate tracts are at issue. Tract A is owned by Rucker Properties. Tract B is owned by the Fridays. Tract C is within the legal description for Tract A and is adjacent to Tract B. The Fridays claim that they and their predecessor owners have actually been using Tract C for so long that they have acquired actual title to it by adverse possession.

I. *The District Court Did Not Err in Concluding that Rucker Properties' Right of First Refusal to Buy Tract B Had Not Been Triggered by an Intra-Family Transfer.*

Rucker Properties' first argument on appeal arises out of a lease agreement between Rucker Properties and the group of family members that owned Tract B: the Fridays, Janet Friday's mother, Dorothy Whipple Davis, and Janet Friday's other siblings and their spouses. Under the lease, Rucker Properties obtained the right to use Tract B. That lease agreement also gave Rucker Properties a right of first refusal to buy Tract B if the owners decided to sell it: "If, during the period of this lease, the Lessors desire to sell the property, the Lessee shall have the first and exclusive right to purchase the property at the fair market price obtainable from any other purchaser."

While the lease was in effect, all of the other owners of Tract B except the Fridays quitclaimed their interests to the Fridays. Rucker Properties contends that this triggered its right of first refusal to purchase the property. Because this contention raises a legal issue regarding the interpretation of a written agreement, we consider the legal issue on appeal without any required deference to the district court. See *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 431, 109 P.3d 1146 (2005); *Bergman v. Commerce Trust Co.*, 35 Kan. App. 2d 301, 304, 129 P.3d 624 (2006). To the extent that any factual findings are relevant in considering this issue, however, we must accept them so long as they are supported by substantial evidence. *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 915-16, 157 P.3d 1109 (2007).

Rucker Properties' argument quickly runs into trouble with one of the district court's factual findings: the district court found that the Fridays' co-owners simply gifted their interests to the Fridays. Whether a transfer is a gift is a question of fact, *In re Estate of Button*, 17 Kan. App. 2d 11, 13, 830 P.2d 1216, *rev. denied* 251 Kan. 938 (1992), and the district court's factual finding on this question is well supported by the evidence. The language contained in the lease provided only a right of first refusal *if* "the Lessors desire to sell the property." But they didn't. As the district

court put it, "The difficulty with plaintiff's position is that there was no offer, no intent to sell, no seller, no buyer and no fair market price upon which the first refusal clause could operate."

The counsel for Rucker Properties contended in oral argument that the word "sell" should be broadly construed to mean "convey." But a sale is no mere conveyance—it is "[t]he transfer of property or title *for a price.*" (Emphasis added.) Black's Law Dictionary 1364 (8th ed. 2004). Although the quitclaim deed said that title was transferred "for the sum of One Dollar and other valuable consideration," the district court's factual finding that there actually was no payment stands on appeal, and no one contends that $1 would have represented "the fair market price obtainable from any other purchaser" referenced in the right-of-first-refusal lease provision.

Rucker Properties attempts to liken the facts of this case to those in *Anderson v. Armour & Company*, 205 Kan. 801, 473 P.2d 84 (1970). In *Anderson,* the defendants/lessors argued that a lease provision, which applied if "the Lessor desires to sell the premises," was not triggered because the "tract was not 'sold' but rather was 'traded' as an essential part of other related property." 205 Kan. at 802-03. The court rejected that argument, finding that the transaction "involved an exchange of properties together with cash [and that] the deed from Armour recited 'bargain, sell and convey'. Further, as far as the Andersons were concerned—the 13.75 acres were effectively 'sold' and placed beyond their reach—regardless of the details of the transaction . . . ." 205 Kan. at 806.

Rucker Properties emphasizes the "placed beyond their reach" language and argues that the quitclaim deed here did the same. But *Anderson* is distinguishable from this case because nothing was exchanged for Tract B. It was purely a gift. Unlike in *Anderson,* no property or cash was given in exchange for the property, and unlike in *Anderson,* the property was not transferred to a third party to the lease agreement.

Both the Fridays and the district court cite *Bergman.* In that case, land subject to a first-refusal clause passed to the owner's estate upon his death, and the estate later transferred the property to the late owner's sister as part of a settlement among family mem-

bers over who would get various assets from the estate. The plaintiff claimed that this transfer triggered his right of first refusal. The court rejected that argument and concluded that the right was not triggered unless the owner or estate specifically intended to sell and a bona fide written offer had been received. The court ruled that the transfer between the estate and the late owner's sister did not trigger the right of first refusal because there was no bona fide written offer and no evidence that the estate was willing to accept such an offer. 35 Kan. App. 2d at 307-08.

*Bergman* supports our conclusion because it states that the owner of a property must form an intent to sell to trigger a right of first refusal, but it is not entirely factually analogous. Although the court did hold that the transfer between the estate and the late owner's sister did not trigger the right of first refusal, the decision was based in large part on the fact that no bona fide written offer had been received. *Bergman*, 35 Kan. App. 2d at 307-08. But the right of first refusal in this case has no such requirement.

We think this issue in our case is resolved simply by saying that a transfer among co-owners without payment doesn't trigger a right of first refusal when the owner must have a "desire to sell the property" to trigger it. Other states have addressed more directly the question of whether a gift can trigger a right of first refusal that is contingent on the "sale" of a property. Those states have concluded that gifts generally do not trigger such clauses. See, *e.g.*, *Hartzheim v. Valley Land & Cattle Co.*, 153 Cal. App. 4th 383, 392, 62 Cal. Rptr. 3d 815 (2007) ("A gift of the property to third parties completely changes control but does not trigger a typical right of first refusal."); *Webster v. Ocean Reef Community Ass'n, Inc.*, 994 So. 2d 367, 370 (Fla. App. Dist. 2008) ("Were we to construe 'sale' or 'purchase' to include Ms. Sculthorpe's transfer and her residential trust's transfer, the Association would have a right of first refusal to acquire the residence for nothing, nada, zero. We will not construe the documents to produce an absurd result."); *Schroeder v. Duenke*, 265 S.W.3d 843, 847 (Mo. App. 2008) ("Under Missouri law, a transfer of property by gift from one family member to another does not trigger a right of first refusal."); *Dewey v. Dewey*, 33 P.3d 1143, 1149 (Wyo. 2001) ("[A]

'sale' in the context of a right of first refusal is a 'transfer for value of a significant interest in the subject property to a stranger who thereby gains substantial [ownership or] control over the subject property.' ").

Several other states have addressed the issue of whether a sale or transfer of property between co-owners triggers a right of first refusal, and those states have concluded that there must be a transfer for value to a third party to trigger such a clause. See *Pellandini v. Valadao*, 113 Cal. App. 4th 1315, 1322, 7 Cal. Rptr. 3d 413 (2003) ("[A] bona fide sale for purposes of a right of first refusal does not occur unless there is a transfer for value to a third party."); *Byron Material, Inc. v. Ashelford*, 34 Ill. App. 3d 301, 305-06, 339 N.E.2d 26 (1975) (sale of an interest in leased property from one co-tenant to another did not trigger a right of first refusal); *Wilson v. Grey*, 560 S.W.2d 561, 561-62 (Ky. 1978) (sale from one of the lessors to another was not a sale of the premises within the meaning of the first-refusal clause of the lease because the transfer did not place any of the landlord's reversionary interest outside the ownership of the existing lessor); *Rogers v. Neiman*, 187 Neb. 582, 583, 193 N.W.2d 266 (1971) ("We think the proper construction of the lease was that an option existed only if the entire property was offered for sale by all of the lessors."); *Baker v. McCarthy*, 122 N.H. 171, 176 (1982) ("The reference to the grantors in the plural, in our opinion, clearly contemplates that an offer to purchase would be made by a third party to the grantors as a whole group."); *Koella v. McHargue*, 976 S.W.2d 658, 660 (Tenn. App. 1998) ("Our conclusion that the transfer between co-tenants did not trigger a right of first refusal protects defendants' rights against third-party purchases."); *Prince v. Elm Inv. Co., Inc.*, 649 P.2d 820, 823 (Utah 1982) ("[F]or purposes of a right of first refusal, a 'sale' occurs upon the transfer [a] for value [b] of a significant interest in the subject property [c] to a stranger to the lease, [d] who thereby gains substantial control over the leased property."); *McGuire v. Lowery*, 2 P.3d 527, 532 (Wyo. 2000) ("We hold that for a transaction to constitute a 'sale' and trigger a first right of refusal, it must involve an arms-length transaction resulting in an actual change in control of the burdened property rather than simply

moving it from the individual owners to an entity controlled by them.").

Finally, the fact that no third parties were involved in the quit-claim deed is also an important point. The right of first refusal applied if the "Lessors desired to sell" the property. It does not state that it applied if *any* or *some* of the lessors desired to sell the property. Rather, the plain language of the clause indicates that all the lessors had to agree to sell the property. The Fridays were lessors under the lease agreement, but they did not surrender or convey any interest in the property. Because the Fridays did not give up their interest in the property, the right of first refusal did not apply.

Accordingly, because the conveyance between the Whipples and the Fridays was an intra-family gift and not a sale and no ownership was transferred to anyone outside of the lease agreement, the right of first refusal was not triggered. The district court did not err in concluding as much.

II. *Substantial Evidence Supported the District Court's Conclusion That Tract C Had Been Acquired by the Fridays or Their Predecessors Through Adverse Possession.*

The district court found that the Fridays (or their predecessors in ownership of Tract B) had gained title to Tract C through adverse possession under belief of ownership. Under K.S.A. 60-503, a party may obtain title to real estate through open, exclusive, and continuous possession of the property for 15 years when that possession is accompanied by a good-faith belief of ownership. See *Wallace v. Magie*, 214 Kan. 481, 486, 522 P.2d 989 (1974). To gain adverse possession, the party's belief of ownership must not only be made in good faith, it also must be reasonable. *Akers v. Allaire*, 17 Kan. App. 2d 556, 558, 840 P.2d 547, *rev. denied* 252 Kan. 1091 (1992).

Unless the facts are undisputed, whether a party has acquired title to land through adverse possession is a question of fact. *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 960, 186 P.3d 829, *rev. denied* 286 Kan. 1176 (2008). We must uphold the district court's factual findings when substantial evi-

dence supports them; appellate courts do not weigh conflicting evidence or evaluate witness credibility. *In re Estate of Hjersted,* 285 Kan. 559, 571, 175 P.3d 810 (2008); *Thompson v. Hilltop Lodge, Inc.,* 34 Kan. App. 2d 908, 910, 126 P.3d 441 (2006).

The district court concluded that the Fridays had met the requirements of adverse possession with regard to Tract C. Specifically, the court found that "[s]aid land has been openly, exclusively and continuously occupied by the Fridays and their predecessors in title, the Whipples, undisputed and in good faith for more than 15 years (actually over 30 years and for almost 20 years before plaintiff became the owner of Tract A)." Substantial evidence supports this conclusion.

Before we discuss the evidence about adverse possession in detail, we need to add a few more of the background facts of the case. Tract C wraps around the top and down one side of Tract B. The section above Tract B is about 160 feet wide, while Tract B itself is only 132 feet wide; the section above Tract B is about 133 feet long. A section of smaller width, about 28 feet (160 -132), runs along one side of Tract B for the rest of its 1320 feet of length. An old stone house originally built by an ancestor of Janet Friday was built on Tract B in the 1800s, but a chicken coop behind the house is on Tract C. In addition, a new modular home placed on the land by the Fridays in the fall of 2004 is located both on Tract B and Tract C. And finally, by way of getting a bearing on possible boundaries, an old railroad tie is located toward the south end of Tract C on what the Fridays contend is the boundary line between Tract C and Rucker Properties' Tract A. That railroad tie is on a north-south line that would run about 9 feet from the chicken coop; one witness said that a railroad tie used to be on that line and behind the chicken coop.

With those basic facts, let's review some of the evidence that supports the district court's conclusion. Several people testified at trial, including members of the Whipple-Friday family, a former lessee of Tract B, and former farmers of Tract A under both Rucker Properties and a predecessor owner; nearly all these people testified that the recognized boundary between the properties was the railroad tie. When the Whipples first moved onto the land in the

early 1970s, they made use of the chicken coop located on Tract C and constructed a pole barn on Tract C. The Whipples also gardened on Tract C.

Janet Friday testified that Dorothy Whipple Davis leased the land after she moved away and had believed that the land she was leasing included Tract C. Although Rucker Properties said that it or its tenant farmers on Tract C or both regularly farmed over the line designated by the railroad tie or hunted on Tract C, there was testimony that both Dorothy Whipple Davis and her tenant farmer, Robert Stotts, gave permission to the farmers working Tract A to farm or mow across the line represented by the railroad tie. These facts support the district court's conclusion that the Whipple-Friday family possessed Tract C openly, exclusively, and continuously under a good-faith belief in ownership for more than 30 years.

Rucker Properties makes only passing reference in its brief to the requirement that adverse possession be continuous by claiming that the Whipple-Friday family did not occupy the land after 1985. But it is undisputed that, although the family did not live on the land from 1985 until 2004, they leased the land to Stotts and Rucker Properties during that time. Certainly, a lease on the property reflects a claim of ownership in it. In *Buchanan v. Rediger*, 26 Kan. App. 2d 59, 63, 975 P.2d 1235 (1999), our court noted that what actions may constitute adverse possession depend upon the nature of the property, its condition, and its appropriate use: "The acts of dominion necessary to establish possession must be adapted depending on the particular land, and neither cultivation, nor residence, is necessary to establish actual possession." Nothing in the record suggests that leasing Tract B (which the Fridays and Whipples believed included Tract C) was inappropriate, unusual, or out of character for that piece of land. Indeed, the fact that both Tracts A and B were leased at different times to different farmers suggests that it was an accepted and common use of land in the area. In *Buchanan*, the owners exercised their claimed ownership of the farmland by leasing the land for tenant farming, just as the Fridays and their predecessors did.

Rucker Properties also does not explicitly challenge the district court's finding that the Whipple-Friday family's possession of Tract

C was open or that the possession extended beyond the 15-year statutory period. Thus, it appears that the gist of Rucker Properties' argument on appeal is that the Fridays' possession of Tract C was neither exclusive nor based on a belief of ownership.

Rucker Properties does challenge whether the Whipple-Davis family exclusively possessed Tract C. It argues that the district court "failed to consider [the Fridays'] long-standing acceptance of use of land at issue." Rucker Properties claims that "[t]he evidence in the case showed that hunters on the [Rucker Properties] property and lessees on both the Whipple and [Rucker Properties] tracts (B and A respectively) regularly worked both sides of the boundary line." Rucker Properties also claims that its use of a private road running across Tracts B and C to access Tract B negates any claim of exclusivity.

One initial problem with this argument is that whether adverse possession has been established is a question of fact. See *Chesbro*, 39 Kan. App. 2d at 960. Rucker did testify that he hunted on Tract C on a yearly basis up to the line of fruit trees. According to Rucker Properties, the fields in Tract A had always been cultivated across Tract C and onto Tract B. But several other people also testified that the boundary line was the railroad tie and that the land was not farmed across that line. And there was also testimony that when the land was farmed across that line, it was done with the permission of the Whipples or their tenant, Robert Stotts. The district court chose to give greater weight to the testimony that the recognized boundary was the railroad tie. As noted above, it is not the job of the appellate court to reweigh the evidence heard at trial. *In re Estate of Hjersted*, 285 Kan. at 571. Because substantial evidence supports the district court's conclusion, it should stand.

Rucker Properties also overlooks an important point when it argues that exclusivity was compromised by its tenants farming over the railroad tie line. Bryan Marshall testified that he worked for Rucker Properties and cultivated the land east of the railroad tie (on Tract C) in 2003 and 2004. But it is important to note that during that time, Rucker Properties was leasing Tract B from the Whipple-Friday family. When use of the property was done with the permission of the party claiming adverse possession, that does

not negate exclusivity because the act of obtaining permission recognizes the superior authority of possession of the party from whom permission was sought. *Aylesbury v. Lawrence,* 166 Kan. 8, 10, 199 P.2d 474 (1948); see also *Bowles v. McKeon,* 217 S.W.3d 400, 406 (Mo. App. 2007) (permissive visits by title owner do not negate adverse possession claim); *Rieddle v. Buckner,* 629 N.E.2d 860, 863 (Ind. App. 1994) (permissive use under easement doesn't negate adverse possession claim). The district court found that several witnesses understood the boundary line to be based on the railroad tie well before Rucker Properties leased Tract A.

Janet Friday testified that the family always believed that the land under the lease included Tracts B and C. Thus, any actions by Rucker Properties or its employees while it was leasing the property don't dispute the exclusive claim of ownership staked by the Whipple-Friday family. Under the lease, Rucker Properties had every right to use the land as a lessee. The same holds true for Rucker Properties' use of the private road running east-west near the southern border of the tracts. Rucker Properties' use of the road and its cultivation onto Tract C does not contradict the exclusive nature of the Whipple-Friday family's possession of that tract because Rucker Properties was using it under the authority given to it by the lease.

There are also key differences between this case and the case cited by Rucker Properties in support of his argument, *Thompson,* 34 Kan. App. 2d 908. Rucker Properties says that, much like the facts of *Thompson,* in this case there was "tacit cooperation between the landowners for an extended period of time, not to say a lack of continuous or exclusive possession by either." In *Thompson,* adjoining landowners both shared in the maintenance and costs of a strip of land between their properties. No discussion was ever had of what the actual boundary was. The district court rejected one party's claim of ownership by adverse possession, and the Court of Appeals agreed after finding, in part, that the evidence showed that both sides claimed a possessory interest in the disputed tract of land through their maintenance activities. 34 Kan. App. 2d at 911.

The key difference in this case is that any cultivation or maintenance of Tract C by Rucker Properties or its tenants was done either after the initial request by Dorothy Whipple Davis or her tenant Stotts, or when Rucker Properties itself was the tenant on Tract B. Thus, unlike in *Thompson*, the actions of Rucker Properties were not contrary to the exclusive possessory interest that the Whipple-Friday family claimed. To the contrary, it actually supports their possessory claim on the land because any maintenance done by Rucker Properties or its tenants was done at the request of the Whipple-Friday family or under the authority of the lease.

Rucker Properties' brief also emphasizes the traditional requirement of hostility in adverse-possession claims and argues that there must have been some sort of notice or intent on the part of the Whipple-Friday family to claim Tract C. Rucker Properties does not address, however, the portion of K.S.A. 60-503 that allows an otherwise open, exclusive, and continuous possession of land to be *either* "knowingly adverse or under a belief of ownership." See *Akers*, 17 Kan. App. 2d at 558. As the district court noted, the facts of this case turn on a belief of ownership of Tract C by the Whipple-Friday family.

With regard to the Whipple-Friday family's belief in ownership, Rucker Properties claims that the family never "asserted a claim against or right to Tract C or any portion of it." He points to the lease, which included only the legal description of Tract B, as evidence of this fact. But that will be true in any adverse possession case: if the legal description matched what everyone claimed on the ground, there would be no dispute. Janet Friday testified that her family always believed that the land covered by the lease was Tracts B and C because that was the land they believed they owned. The district court concluded that the lease of the land did not contradict the family's claim against Tract C but rather "confirms their belief in their right of possession and ownership . . . ." Nothing in the record suggests that the Whipple-Friday family's belief in their ownership in Tract C was based on anything other than good faith. It was certainly a reasonable belief because either they or their tenants had been using Tract C since the early 1970s. Accordingly, the district court did not err in finding that the Whip-

ple-Friday family was operating under a good-faith belief in ownership.

Although Rucker Properties goes to great lengths in its brief to dispute the recollections and testimony about the railroad tie, the district court chose to accept that testimony. To dismiss that testimony on appeal as insufficient or unreliable would be to reweigh the credibility of the witnesses, and that's not the duty of an appellate court. See *In re Estate of Hjersted*, 285 Kan. at 571. Accordingly, because substantial evidence supports the district court's conclusion that the Whipple-Friday family adversely possessed Tract C, we must affirm the district court's decision.

III. *Rucker Properties Cannot Raise a New Claim for a Road Easement on Appeal.*

Rucker Properties' final argument is that the district court erred to his "material prejudice" by awarding all of Tract C to the Fridays. Rucker Properties claims that the decision to award all of Tract C to the Fridays allowed them to block off access to the private east-west road that runs across Tracts B and C and onto Tract A. Rucker Properties then argues that we should reverse the judgment granting adverse possession to the southern portion of Tract C "and remand for further proceedings which take the legitimate concerns of ingress and egress into account and fashion any further action in light of it."

But Rucker Properties did not present any claim for a road easement in this lawsuit, either in the pleadings or in the pretrial order. Nor did it make an argument after trial to the district court for some sort of easement for use of an existing road on Tract C. We note that Rucker Properties now seeks not only some sort of easement to use the road on Tract C but also on Tract B, a parcel to which it has no claim of ownership whatsoever. Such a claim may not be raised for the first time on appeal. See *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007).

The judgment of the district court is affirmed.