[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12198
Non-Argument Calendar
_____

D.C. Docket No. 9:15-cv-80058-KLR

KENNETH J. SACK, et al.,

Plaintiffs,

N111KJ, LLC,

Plaintiff-Appellant,

versus

CESSNA AIRCRAFT COMPANY,

Defendant-Appellee,

CITATION AIR,
a wholly owned subsidiary of
Cessna Aircraft Company,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 19, 2017)

Before ED CARNES, Chief Judge, HULL and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff N111KJ, LLC bought a plane from Cessna Aircraft Company on the condition that Cessna's wholly owned subsidiary, CitationShares Management, LLC, would manage the jet and rent it out on plaintiff's behalf for five years. Three years later Cessna informed plaintiff that it would no longer manage the jet, and plaintiff responded by bringing suit for fraudulent inducement and breach of contract. The district court dismissed its claims, and plaintiff appeals.

**I.**

Because we are reviewing the district court's grant of Cessna's motion to dismiss, we assume all facts alleged in the complaint are true and view them in the light most favorable to plaintiff. Butler v. Sheriff of Palm Beach Cty., 685 F.3d 1261, 1265 (11th Cir. 2012).

Plaintiff and Cessna entered into a purchase agreement in which plaintiff agreed to buy a Cessna Citation CB 525B private jet for $7.2 million. During the contract negotiations, Cessna, through its agents, promised that it would manage the plane for the first five years, renting it out to third parties so that plaintiff could

2

recoup part of the purchase price. Cessna also promised that the jet would still be worth 90% of its purchase price after five years. As a result, the purchase agreement contained a "Special Condition[ ]" providing that:

> This Agreement is contingent upon [Cessna] agreeing to pay for the management fee for participation in CitationAir Jet Management program for a period of five (5) years. The payment for CitationAir Jet Management program is not transferable to a third party. Cancellation of the CitationAir Jet Management program by [plaintiff] will not result in the refund of any CitationAir Jet Management program fees to [plaintiff].

The management program was administered by Cessna's wholly owned subsidiary CitationShares. The purchase agreement also contained a choice of law clause providing that all disputes would be resolved under Kansas law.

About three years after the purchase, Cessna informed plaintiff that the jet would no longer be enrolled in the management program. According to plaintiff, Cessna made that abrupt change because it was selling $1 billion in airplanes to a company called NetJets — on the condition that Cessna would end any competing airplane management programs. Faced with onerous maintenance and storage expenses, plaintiff was forced to sell the jet for $5.15 million, which is less than 90% of the purchase price.[1]

In response to Cessna's cancellation of the management program, plaintiff brought this lawsuit. In its amended complaint, it set out three claims. First, it

---

[1] Ninety percent of $7,200,000 is $6,480,000. The amount plaintiff actually sold the jet for — $5,150,000 — is 72% of the original purchase price.

3

claimed that Cessna knew that its promises about maintaining the jet and representations about the jet's future value were false when Cessna made them, meaning that Cessna fraudulently induced plaintiff to enter into the contract. Second, plaintiff claimed that the jet's disenrollment from the management program breached the purchase agreement. The amended complaint did not cite any authority for that claim, but it apparently relied on a common law breach of contract theory. Third, plaintiff claimed that the disenrollment was also a breach of contract under Article 2 of the Uniform Commercial Code, which Kansas had adopted, Kan. Stat. Ann. §§ 84-2-101 to -725.

Cessna moved to dismiss all three claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted Cessna's motion, dismissing the amended complaint with prejudice.

## II.

Plaintiff challenges the district court's dismissal of all three of its claims. "We review de novo the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim . . . ." Butler v. Sheriff of Palm Beach Cty., 685 F.3d 1261, 1265 (11th Cir. 2012). Plaintiff's allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.

### A.

4

Plaintiff contends that the district court erred by applying Florida law to its fraudulent inducement claim, and contends that it pleaded a viable fraudulent inducement claim under Kansas law.  "In a diversity action such as this one, a federal court must apply the choice-of-law principles of the state in which it sits." Michel v. NYP Holdings, Inc., 816 F.3d 686, 694 (11th Cir. 2016).  That means that we must use Florida conflict of laws rules to determine whether the fraudulent inducement claim is governed by Florida substantive law or Kansas substantive law.

In Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co. ("Mazzoni Farms I"), 761 So. 2d 306 (Fla. 2000), this Court certified to the Supreme Court of Florida the question of whether "a choice-of-law provision . . . control[s] the disposition of a claim that the agreement was fraudulently procured, even if there is no allegation that the choice-of-law provision itself was fraudulently procured." Id. at 310.  The Florida court answered that the choice of law provision controls. Id. at 313; see also Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co. ("Mazzoni Farms II"), 223 F.3d 1275, 1276 (11th Cir. 2000) (receiving the Supreme Court of Florida's answer).  The key factor in the court's analysis in that case was that the plaintiffs had "affirmed" the contract by suing for damages. Mazzoni Farms I, 761 So. 2d at 313. By affirming the contract, they had also affirmed the choice of law provision, meaning that that provision governed which

5

state's substantive law controlled the analysis of the fraudulent inducement claim. Id. That was so even though the plaintiffs had, in the alternative, requested rescission of the contract. Id.[2]

Here too plaintiff has affirmed the purchase agreement by "demand[ing] . . . monetary damages" as relief for Cessna's fraudulently inducing plaintiff to enter into the contract. That means that plaintiff has implicated the agreement's choice of law provision, so its fraudulent inducement claim is to be decided under Kansas law. The fact that the amended complaint asks, in the alternative, for the district court to void the purchase agreement does not change that result. See id.

Having decided that Kansas law applies, we now turn to the substance of the fraudulent inducement claim. "Kansas courts have recognized that promises regarding future income and earnings can constitute actionable fraud." K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1157 (10th Cir. 1985) (citing

_____

[2] After this Court received the Supreme Court of Florida's answer to that question, this Court held in a different case that a choice of law provision in a contract did not control which state's law applied to a fraudulent inducement claim. Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1301 (11th Cir. 2003) (applying Florida law). Whether or not that decision was correct, we must follow the rule set out in the Mazzoni Farms I decision and received by this Court in a published decision, Mazzoni Farms II, 223 F.3d at 1276, because it predates Green Leaf Nursery and it is squarely on point, see Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000) (holding that we are bound to follow an earlier decision to the extent it conflicts with a later decision). Moreover, the Green Leaf Nursery decision is based on the fact that the choice of law clause in that case did not cover "disputes . . . arising out of the relationship of the parties," leading the Court to conclude that the clause was "narrow." 341 F.3d at 1300. By contrast, the clause in the purchase agreement at issue here expressly provides that "the legal relationships between the parties shall be determined[ ] in accordance with the commercial laws of the State of Kansas." That clause is broader than the clause in Green Leaf Nursery, and our decision in that case does not dictate the result here.

Fisher v. Mr. Harold's Hair Lab, Inc., 527 P.2d 1026, 1034–35 (Kan. 1974)).  They are especially likely to find a viable claim for fraud where the promising party has superior knowledge about the subject of the promise.  Id.  In addition, Kansas courts consider the "degree of certainty or uncertainty" at the time of the promise "as to what the future will bring."  Fisher, 527 P.2d at 1035.  For example, statements about a new business "may involve too much guesswork to constitute actionable fraud," while statements about an established business with a long financial history may be certain enough to give rise to an action for fraud.  Id.

In its amended complaint, plaintiff alleged that Cessna made specific promises about the jet's "net cash flow" and residual value at the end of five years. It also alleged that it relied on those statements when it decided to enter into the purchase agreement, and that Cessna knew at that time that the statements were false.  And it alleged that Cessna had sold over 6,000 Citation jets and ran the management program, putting Cessna in a vastly superior position to know what the jet's future value and earnings would be.  With all of that, plaintiff has alleged sufficient facts to support a claim of fraudulent inducement under Kansas law.

The district court believed that plaintiff was "precluded" from relying on Cessna's allegedly fraudulent statements by Florida's version of the parol evidence rule.  According to the district court, the purchase agreement's merger clause prevented plaintiff from introducing any oral statements outside the four corners of

7

the written agreement.  But Kansas law, not Florida law, is the applicable law, and Kansas courts "permit[ ] the use of [parol] evidence where a contract is procured or induced by the fraudulent representations of one of the parties which were relied upon by the other."  Culp v. Bloss, 457 P.2d 154, 157 (Kan. 1969).  That is so even when the parties have expressly disclaimed any oral representations not reflected in the written contract, as they did here.  See Miles Excavating, Inc. v. Rutledge Backhow & Septic Tank Servs., Inc., 927 P.2d 517, 518 (Kan. Ct. App. 1996).

Plaintiff's claim falls within that exception to the parol evidence rule because it has pleaded that it relied on the allegedly fraudulent statements.  As a result, plaintiff has properly pleaded a claim for fraudulent inducement under Kansas law.  We reverse the part of the district court's judgment dismissing that claim.

B.

Plaintiff also contends that the district court should not have dismissed its breach of contract claim centering on Cessna's failure to continue managing the jet.  Because that is a breach of contract claim arising from the purchase agreement, the choice of law provision controls that claim, Dataline Corp. v. L.D. Mullins Lumber Co., 588 So. 2d 1078, 1079 (Fla. 4th DCA 1991), meaning that Kansas substantive law applies.

8

1.

In its amended complaint plaintiff asserts two separate claims of breach of contract, one under Kansas' incorporation of the UCC and one, apparently, under the common law.  The problem is that the UCC displaces the common law where the UCC is applicable, Kan. Stat. Ann. § 84-1-103(b), and the UCC has its own breach of contract rules, id. §§ 84-2-501 to -725.  As a result, if the UCC applies to the purchase agreement, plaintiff's common law breach of contract claim is out.  But if the UCC does not apply to the agreement, then plaintiff does not have a viable claim for breach under the UCC (but it may have a viable claim under the common law).  It must be one or the other; it cannot be both.  See Golden v. Den-Mat Corp., 276 P.3d 773, 791 (Kan. Ct. App. 2012).

The purchase agreement is a "mixed contract" because it involves the sale of goods (the airplane), and the sale of services (the management program).  Kansas courts use the "predominant purpose" test to determine whether a mixed contract is governed by the common law or the UCC.  Id.  That "test attempts to discern the principal nature of the transaction:  Is the buyer seeking services to which the goods are incidental, or is the buyer acquiring goods to which the services are auxiliary?"  Id.

Applying the predominant purpose test to this set of facts is not difficult. The purpose of the "Purchase Agreement" obviously was to obtain the airplane.

The enrollment in the management program was secondary to that, which is why the only mention of the program comes in an exhibit attached to the end of the contract. Because plaintiff was acquiring goods to which services were only auxiliary, the UCC governs the contract. See id.

The district court came to the opposite conclusion based on its belief that the predominant factor test "is not applicable where two separate contracts — one addressing goods, and one addressing services — are involved." In this case it found that the purchase agreement was a contract for acquiring goods, and the management agreement between plaintiff and CitationShares was a contract for performing services. Because the dispute centered on the jet's disenrollment from the management program, and it was enrolled in that program pursuant to the management agreement, the district court believed that the rules governing contracts for services — that is, the common law — were the applicable ones.

We are of a different view. It may be that plaintiff could have sued CitationShares for breach of the management agreement, and that claim would have been decided under common law principles. But plaintiff sued Cessna only for breach of the purchase agreement. That agreement dispute is governed by the

UCC.  The fact that plaintiff could have, but did not, sue a different party on a different contract or claim does not change the conclusion.[3]

Accordingly, plaintiff cannot state a claim for relief on a theory of common law breach of contract, so the district court properly dismissed that claim — albeit on a different ground.

### 2.

However, plaintiff's UCC breach of contract claim does state a plausible claim for relief.  In its analysis of plaintiff's claims, the district court found that the purchase agreement did not "require [Cessna] to maintain the jet in the management program for five years, nor d[id] the agreement bar [Cessna] from ending Plaintiff's participation in the program."  It is true that the agreement does not contain an express provision to that effect, but it cannot be that plaintiff bargained for and obtained a management arrangement that could be rendered valueless an hour later if Cessna decided it no longer wanted to manage the jet.  See Johnson Cty. Bank v. Ross, 13 P.3d 351, 353 (Kan. Ct. App. 2000) ("The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided.").  In addition, the

---

[3] As part of the UCC breach of contract claim, the amended complaint contains allegations that Cessna breached "the Management Agreement."  We interpret that term to refer to the "Special Condition" in which Cessna agreed to pay the fees for the jet's enrollment in the management program.  It does not seem reasonable to interpret it to mean the contract between plaintiff and CitationShares because that contract is never mentioned in the amended complaint and the amended complaint only alleges that Cessna, not CitationShares, breached the contract.

management program provision expressly permits plaintiff to remove the jet from the program, but it contains no provision permitting Cessna to end the program. The parties obviously agreed that Cessna would continue managing the jet for the five year period, unless plaintiff relieved Cessna of the obligation to do so.

To put it in technical terms, the provision contains an "implied in fact condition" that Cessna not disenroll the jet from the management program. "Implied in fact conditions are similar in their nature to express conditions, except that the parties have expressed their intentions not in words but in the nature of their undertakings." Bergman v. Commerce Tr. Co., 129 P.3d 624, 627 (Kan. Ct. App. 2006). They are conditions that are "necessarily inherent in the actual performance of the contract." Id. at 628 (quoting 13 Richard A. Lord, Williston on Contracts § 38:11 (4th ed. 2001)). Here, it was inherently necessary for Cessna to keep the jet enrolled in the management program in order for plaintiff to get the benefit of its bargain.

"The duty of good faith and fair dealing" that is imposed by the UCC, see Kan. Stat. Ann. § 84-1-304, "requires at least that a party do nothing to prevent the occurrence of a condition of that party's duty." M W., Inc. v. Oak Park Mall, L.L.C., 234 P.3d 833, 846 (Kan. Ct. App. 2010). Plaintiff has alleged that Cessna prevented a condition of its obligation to pay the jet's management fees from occurring by disenrolling the jet from the management program. That allegation

states a claim for violation of the duty of good faith and fair dealing that the UCC imposes.

Cessna argues that, even if it had a duty to keep the jet enrolled in the management program, that duty ended three years into the contract. It bases that argument on the management agreement between plaintiff and CitationShares, which enrolled the jet in the management program for three years, with automatic one-year renewals after that. But that provision is entirely consistent with the five-year term of the purchase agreement. The purchase agreement gave plaintiff two options: it could keep the jet in the CitationAir Management Program for up to five years, in which case Cessna would pay the management fees; or plaintiff could at some point use a different management program (or no management program at all), in which case Cessna would no longer be obligated to pay the management fees. It makes sense under those conditions that plaintiff would initially enroll for only three years, subject to renewals thereafter.

Plaintiff's bargained-for flexibility does not change the fact that Cessna was obligated to pay the management fees for up to five years if plaintiff decided to keep the jet in the program that long. There is no indication at this stage of the litigation that plaintiff disenrolled the jet from the program or that more than five

13

years passed since the jet entered the program, so Cessna's obligation was still effective at the time it allegedly caused the jet to be disenrolled.[4]

For those reasons, we reverse the district court's dismissal of plaintiff's fraudulent inducement and UCC breach of contract claims, and the case is remanded for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[4] Although plaintiff does not specifically allege it, we can infer that the alleged breach occurred either before the jet's initial three-year term in the management program was complete or after the term had been renewed. To the extent that Cessna asserts that the jet was no longer in the management program because plaintiff did not renew the program's term, Cessna will be free to adduce evidence proving that assertion if and when the parties enter discovery.

14