No. 45,797

K. T. Anderson, Russ B. Anderson, and Robert L. Anderson, *Appellees*, v. Armour and Company, A Corporation, *Appellant.*

(473 P. 2d 84)

Opinion filed July 17, 1970.

*Elvin D. Perkins,* of Emporia, argued the cause, and Everett E. Steerman and Keith A. Greiner, of Emporia, were with him on the brief for appellant.

*George Forbes, of Emporia,* argued the cause, and Russ B. Anderson, of Emporia, and Arthur Claussen, of Topeka, were with him on the brief for appellees.

The opinion of the court was delivered by

Price, C. J.: This is an action by lessees against their lessor for damages resulting from the alleged breach of the written lease agreement.

Judgment was for plaintiff lessees, and defendant lessor has appealed.

The decisive question in the case involves the interpretation and enforceability of one provision of the lease.

For a number of years prior to 1963 the Santa Fe Railway was the owner of a 40-acre tract of land just west of Emporia adjacent to its railroad tracks. The south 3 or 4 acres were used by the Santa Fe in its operations. The remainder of the tract was for many years leased by the railroad to plaintiff Andersons and was used by them in their large-scale cattle feeding operations. The improvements and equipment were owned by the Andersons and placed there at their expense.

In June 1963 Santa Fe sold and conveyed to Armour and Company approximately 30 acres of the 40-acre tract for the construction of a packing plant. The Andersons relinquished their lease rights in the 30 acres thus sold, and entered into a written lease with Armour covering the west 13.75 acres of the 30-acre tract bought by Armour from Santa Fe.

This lease from Armour to the Andersons was entered into on June 18, 1963, and was for a term of five years commencing July 1, 1963 and ending June 30, 1968. It provided that either party had the right to terminate the lease at the end of the third or fourth year of the five-year term by giving written notice of intention to terminate not less than 12 months prior to the end of the third or fourth year, as the case may be.

The lease also contained the following provision—the alleged breach of which by Armour resulted in this law suit:

"In the event the Lessor desires to sell the premises, the Lessor agrees to notify the Lessee in writing of such intention and of the purchase price and shall allow Lessee fifteen (15) days from day of mailing such notice within which to attempt to negotiate a purchase and sale contract for the premises with the Lessor."

In passing—it is noted the lease further provided that lessees were prohibited from filing it or a copy thereof in the office of register of deeds of Lyon county or in any other public office, and that if the same should be done the entire lease—at the option of lessor—would be null and void and of no further force and effect.

The parties operated under the lease for several years, and neither party exercised the right to terminate.

In the fall of 1967, however, Armour closed down its packing plant, and on November 29, 1967, conveyed by warranty deed the entire 30 acres—including the 13.75 acre tract under lease to the Andersons—to Iowa Beef Packers, Inc.

In violation of the above quoted provision of the lease—Armour admits that it gave no notice to the Andersons of its plan to dispose of the property.

Several months later—on March 25, 1968, Armour wrote to the Andersons and informed them of the conveyance and that the lease in question had been assigned to Iowa, the purchaser.

On October 25, 1968, the Andersons filed this action against Armour. Without detailing the allegations of the petition—the basis of the action was that the tract in question had a unique value to them and that because of Armour's failure to notify them of the proposed sale to Iowa they were deprived of the use of the tract and the opportunity to purchase the same—all to their damage in the amount of $75,000.00.

Armour's answer alleged that the provision of the lease relied on by the Andersons was vague, indefinite, uncertain and unenforceable and therefore of no force and effect, but that if valid and enforceable it was not breached in that it applied only to the 13.75 acre tract and that in fact such tract was not "sold" but rather was "traded" as an essential part of other related property. Damage was denied.

The case was tried by a jury which answered special questions and returned a verdict for plaintiff Andersons in the amount of $25,000.00. Judgment was entered thereon, and defendant Armour has appealed.

As stated—the real question in the case concerns the interpretation and enforceability of the quoted provision of the lease.

Briefly stated—Armour contends the provision is unenforceable because it is vague and uncertain; that it contains no price or formula by which price can be determined; that it is nothing more than an agreement to make a contract and as such is not binding because all of the terms and conditions were not agreed upon and stated therein.

On the other hand—the contention of lessees (plaintiff Andersons) can best be stated by quoting from their brief:

"The principal issue is whether or not the pertinent clause in the lease between the parties created an enforceable right. Before reviewing the applicable authorities we call the court's attention to a basic distinction between the terms of an 'option' in a lease or other instrument as compared to a 'right of preemption', which is some times referred to as a 'first right of refusal', or 'first right to purchase'. In the case of an option it is consistently held that the terms by which the optionee may buy the property must be set out in detail in the lease or other instrument granting the option because the lessor or party giving the option has no discretion in the matter. The optionee has

the absolute right to proceed under the terms of the option regardless of whether the optionor desires to sell the property. A right of pre-emption, on the other hand, is a right which does not come into existence unless the lessor or party giving the right decides to sell the property. At the time that decision is made the terms or price of the property are then communicated to the party having the right of pre-emption, who can then elect to buy the property at the price quoted within the time stated in his right of preemption. The terms of the proposed sale do not need to be definite in the original instrument granting the right of pre-emption because the terms are something which are within the control of the person giving the right and are specified by him only at such time as he decides to sell. The courts sometimes use language to the effect that a right of pre-emption ripens into an option when the lessor decides to sell, but before that time the basic distinction between an option and a right of pre-emption remains."

The foregoing theory as to the distinction between an "option" and a "right of pre-emption" is supported by numerous authorities, and we believe is sound. *Barling v. Horn*, 296 S. W. 2d 94 ( Missouri, 1956) was an action for specific performance of a clause in a lease whereby the lessees were to have the first opportunity to purchase the premises if the lessors decided to sell prior to the expiration of the lease. The lessors sold the property to a third party. It was held that the clause gave lessees a right of pre-emption, was supported by consideration, and that lessees should have been given an opportunity to purchase the property under the same terms and conditions as it was sold. Headnote 4 of the case reads:

"Where lease gave lessees first opportunity to purchase if lessors decided to sell, when lessors decided to sell they were obligated, before they consummated a sale to another, to afford lessees the first opportunity to purchase at the price and upon the terms lessor had decided on, even though the lease did not stipulate price or terms."

To the same effect is *Weintz v. Bumgarner*, 150 Mont. 306, 434 P. 2d 712 (1967) in which it was held that a provision in a lease that the owner agreed to give the tenant written notice of specific intention to sell and to permit tenant to have ten days in which to arrange purchase of the premises was not void for vagueness or uncertainty, but meant that at such time as the owner formed an intention to sell on specific terms and conditions he was required to give the tenant written notice of such intention and give tenant ten days in which to arrange purchase of the property on the same terms and conditions, and thereafter if the tenant did not arrange such purchase with the owner, the owner was free to sell the property to another person subject to the existing lease. Paragraphs 2 and 3 of the syllabus read:

"A pre-emption differs from an option in that a pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell, but merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price, and upon receiving such an offer, the pre-emptioner may elect whether he will buy, and if he elects not to buy, then owner of the property may sell to anyone.

"Under a lease giving tenant a pre-emptive right of purchase, at such time as the owner forms a specific intention to sell such right ripens into a present enforceable contract right of the tenant to purchase."

Tinkler v. Devine, 159 Kan. 308, 154 P. 2d. 119, involved the enforceability of a lease provision similar to the one before us. It was held:

"An option clause in a lease provided that if the lessor should find a buyer, the lessee should have the first right to purchase but that the offer must be accepted within seven days after notice, held, that under such a clause the lessee must accept or reject the offer within seven days but had a reasonable time to comply with the terms of the contract of sale. (Syl. 1.)

"A tenant in possession of real estate under a lease had an option to purchase the real estate on the same terms as the land should be offered to a third party, the land was sold to a third party who had notice of this option without notice to the lessee, held, the lessee was entitled to specific performance of the contract even though the land had been conveyed to the third party." (Syl. 2.)

Application of what has been said to the provision here in question is clear. It gave the lessees (Andersons) a pre-emptive right of purchase, and, when Armour decided to sell, such right ripened into an enforceable contract right of the Andersons to purchase, and the trial court was correct in so concluding. Absent a substantial question of material fact, the interpretation of a contract becomes a matter for the court (McAfee v. City of Garnett, 205 Kan. 269, syl. 6, 469 P. 2d 295).

Other matters urged by Armour require but brief discussion.

For example, it is contended that the clause in question was not breached because a larger tract—the entire 30 acres—was disposed of,—and further—its transaction with Iowa was a "trade or exchange" of property rather than a "sale" in the strict sense of the word.

Both contentions are completely untenable. While it is true the clause in the lease had reference only to the 13.75 acres leased to the Andersons—it was Armour who prepared the lease and if it was intended that the provision not apply in the event Armour desired to sell more than just that tract—the clause could have so provided. And, while it also is true that the deal between Armour

and Iowa involved an exchange of properties together with cash—the deed from Armour recited "bargain, sell and convey". Further, as far as the Andersons were concerned—the 13.75 acres were effectively "sold" and placed beyond their reach—regardless of the details of the transaction between Armour and Iowa.

What has been said disposes of any question as to the trial court's refusal to give Armour's requested instruction No. 1, and the objection to a portion of the court's instruction No. 3. The remainder of that instruction was substantially identical to Armour's requested instruction No. 2 which was given—

"You are instructed that if you find that Plaintiffs are entitled to recover damages hereunder for the loss of a right to purchase the 13.75 acre tract in question, the burden of proof of the amount of such damages is upon Plaintiffs. The proper measure of such damages is the difference between the fair market value of the tract without improvements and the fair market value of the tract as it was improved on the 29th day of November, 1967, less the salvage value of such improvements.

"2. What was the fair market value of the 13.75 acres on November 29, 1967, with improvements thereon?

"3. What was the fair market value of the 13.75 acres on November 29, 1967, without improvements?"

Having requested the instruction—Armour may not now be heard to complain.

In answer to special questions the jury found the value without improvements to be $55,000.00 and with improvements to be $80,000.00, and returned a general verdict for plaintiff Andersons for the difference—$25,000.00.

Finally, it is contended there was no substantial evidence to establish any damage suffered by the Andersons. The testimony as to the large amount of expensive equipment placed on the tract for use in feeding several thousand head of cattle will not be detailed. It is sufficient to state the plaintiffs' evidence as to value of the tract with the improvements ranged from $125,000.00 to $150,000.00 and without the improvements from $55,000.00 to $68,750.00. Had they been given the opportunity to buy the tract they would have been required to pay the value of it without improvements—which they already owned. Therefore, it follows their damages were limited to the value of the tract with the improvements as compared to its value without the improvements—and this was the measure of damages stated by Armour in its requested instruction No. 2. The verdict was well within the evidence.

Other points have been noted, but need not be discussed. Running all through this case is the fact that Armour simply breached the lease provision in question.

We find nothing in the record approaching reversible error and the judgment is affirmed.

SCHROEDER, J., dissenting.