No. 115,819

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KEVIN W. TREAR,
*Appellant/Cross-appellee*,

v.

SUSAN J. CHAMBERLAIN, NATHAN GOODELL, and JAMIE JASNOSKI,
*Appellees/Cross-appellants*.

SYLLABUS BY THE COURT

1.

When there is no dispute about the facts, an appellate court is in the same position as the district court in ruling upon a motion for summary judgment.

2.

Kansas adopted the Uniform Statutory Rule Against Perpetuities in 1992. It does not apply to future interests in land created before the effective date of the act.

3.

The common-law rule against perpetuities directs that any future interest in land which does not vest within 21 years after the termination of a life in being is void.

4.

A document should be interpreted, where feasible, to avoid the conclusion that it violates the rule against perpetuities.

1

5.

The benefit of the right of preemption is personal to those who are granted the right in an agreement and does not continue to successor owners. The right ends when the last signatory dies or divests himself or his interest or otherwise waives the right, which makes the interest vest within the time period of the rule against perpetuities.

6.

A right of refusal is an interest in land which is subject to the statute of frauds.

7.

The statute of frauds only requires the material terms of a contract to be stated with reasonable certainty.

8.

A right of refusal is a defined legal term. Under a right of refusal, when a seller forms the intent to sell the property subject to the right, an option contract between the seller and the holder of the right is formed. The holder of the right may exercise the option contract and purchase the land, but if the holder does not exercise that right the seller is free to sell the land to anyone else.

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed January 13, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Stuart N. Symmonds* and *Robert N. Symmonds*, of Symmonds & Symmonds, LLC, of Emporia, for appellant/cross-appellee.

*Karen K. McIlvain*, of McIlvain Law Office, LLC, of Madison, for appellees/cross-appellants.

Before POWELL, P.J., PIERRON and HILL, JJ.

HILL, J.:  The public policy in Kansas commands that land must not be tied up forever by ancient covenants. This policy is expressed in the common-law rule against perpetuities which nullifies any contractual provision that tries to control land forever. Aware of this, and wanting to avoid the harsh result of contract nullification, modern courts frequently interpret contracts to create personal interests in real estate that are unique to the contracting party. Such interests cannot be passed on to all future generations and, thus, cannot violate the rule against perpetuities. We interpret the right of refusal provision in the 1986 real estate contract between Kevin W. Trear and Leonard and Susan Chamberlain to be the personal right of Trear that cannot be passed on to anyone else.

Because the district court erroneously held that the rule against perpetuities nullified the right of refusal provision of the real estate contract, we reverse and remand for further proceedings. We do, however, hold that the district court properly ruled that the same contract did, in its "description of adjoining land," satisfy the statute of frauds. We affirm that portion of the district court's ruling.

*We are in the same position as the district court.*

Because there are no disputes about the facts, we are in the same position as the district court in ruling upon this motion for summary judgment. See *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013).

Trear bought some real estate from the Chamberlains in 1986 in Lyon County, Kansas. Trear was not represented by counsel and the Chamberlains' lawyer drafted the contract. The right of refusal provision that is at the heart of the controversy in this case states:

3

"6. The parties mutually agree that in the event the real estate presently owned by SELLERS [the Chamberlains] which is adjoining the real estate which is the subject of this Contract, is offered for sale by SELLERS, SELLERS shall extend unto PURCHASER [Trear] the first right of refusal to purchase said adjoining real estate at a price and upon terms mutually agreed upon by the parties. If the parties cannot agree, this right of first refusal shall lapse and thereafter be considered null and void."

In addition, the contract provided that it was "binding upon the heirs, legal representatives, and assigns of the parties hereto."

Leonard Chamberlain died in 2013. Later that year, Susan wanted to sell the adjoining real estate, subject to the right of refusal provision. Chamberlain's lawyer wrote a letter to Trear containing an offer by Chamberlain to sell the property for $289,000. The letter stated that if Trear did not reply by November 12, 2013, it would be assumed Trear did not want to purchase the real estate and Chamberlain's obligation under the right of refusal provision would be fulfilled.

The property Chamberlain wanted to sell was a 73-acre tract that included the house in which the Chamberlains had lived. Offering self-serving statements in her affidavit in support of summary judgment, Chamberlain's daughter, Jamie Jasnoski, stated two companies had appraised the property. One set the value at $299,000 and the other company said the property was valued at $275,000. However, neither company had a file on the appraisal. Trear neither accepted the offer nor made any counteroffer. After that, Chamberlain listed the real estate with Tri-County Realty, which advertised the property for sale at $295,000. Tri-County Realty was unable to sell the property for the listed price. Trear never made an offer to Tri-County Realty to purchase the property.

Shortly after she took the property off the market, Chamberlain sold a 64-acre tract which did not include the house, to Jasnoski and Nathan Goodell for $91,125—a price considerably lower than that offered to Trear. When he learned of the sale, Trear sued

4

Chamberlain, Goodell, and Jasnoski to enforce his right of refusal and to transfer the property to him instead. Chamberlain, Goodell, and Jasnoski filed a motion for summary judgment.

In its summary judgment ruling, the district court found that the right of refusal provision, when read in combination with the binding clause at the end of the contract, violated the rule against perpetuities. The district court refrained from reforming the contract under the provision in K.S.A. 59-3405(b) permitting the court to make such modifications because there was no petition before the court asking to modify the contract. Trear asked the judge whether he would deny a petition if one was presented and the judge stated: "[a]t this point. I'll be glad to have direction from the court of appeal's [*sic*] on this issue."

The court went on to hold that the right of refusal provision did not violate the statute of frauds because the meaning of "adjoining property" in the contract could be ascertained. Both parties appealed the summary judgment rulings.

Because this contract was created *before* Kansas adopted the Uniform Statutory Rule Against Perpetuities, it does not apply to the future interest created by the contract in this case. See K.S.A. 59-3405(a). Instead, the common-law rule against perpetuities does apply. That means any interest which does not vest within 21 years after the termination of a life in being is void. *Barnhart v. McKinney*, 235 Kan. 511, 516-17, 682 P.2d 112 (1984).

*Four cases offer us guidance.*

Our view of this case is guided by what appears to be the clear evolution of the Supreme Court's application of the rule against perpetuities. We begin with an older case that ruled a contract violated the rule. The next three cases, all more recent, held the

5

contracts did not violate the rule. They demonstrate the court's growing reluctance to void contracts.

The first case, *Henderson v. Bell*, 103 Kan. 422, 173 P. 1124 (1918), found there was a violation of the rule against perpetuities. The offending provision in that contract stated

> "'should first parties elect to sell the following 40 acres now occupied by them, to wit: The N.W. ¼ of the S.W. ¼ of Sec. 10-7-21, in Atchison county, Kan.-the second parties shall have the right to purchase said last-mentioned 40 at the agreed price of $65 an acre.
>
> "It is further agreed that, if said parties elect to sell said S.W. ¼ of the S.W. ¼ of Sec. 10-7-21 at any time in the future, the first parties shall have the right to purchase same at the agreed price of $65 an acre, provided first parties will also buy the balance of the above-described land at the agreed price of $40 an acre.'" 103 Kan. at 423-24.

Our Supreme Court expressly held that the language violated the rule against perpetuities because "the Buchanans and those holding under them, either as assignees or heirs, would hold a right to obtain an interest in the property running for an indefinite period of time." 103 Kan. at 424-25. The *Henderson* court viewed the language "at any time in the future" to mean heirs and assignees could act under the right. The court also took issue with the $65 required sale price, because at the time of sale the land "may be worth $1,000 an acre." 103 Kan. at 424.

The next cases all held that the contract provisions did not violate the rule against perpetuities. In *Crawn v. French*, 7 Kan. App. 2d 672, 646 P.2d 1158 (1982), a panel of this court held that when a preemptive right is personal to the buyer, the rule against perpetuities is not violated. The provision read:

6

"'The conditions of this option are that grantors shall retain the exclusive use and enjoyment of this realty so long as they desire, but upon their election to move therefrom, to a new residence, they shall notify grantee at her place of employment or her residence, by mail, of their decision. Grantee will then have sixty (60) days within which to exercise this option to buy.

"'Upon proof of receipt of mailing notice to Mary Ann French and her lack of exercise of this option within the sixty (60) day term, this exclusive right herein granted will terminate and be held for naught.'" 7 Kan. App. 2d at 673.

This court held that the contract language created a personal preemptive right in French and the preemptive right did not extend to French's heirs or assigns. 7 Kan. App. 2d at 674-75. Obviously, since that was a personal right, it would expire at French's death.

Next, in *Barnhart*, 235 Kan. 511, the court held a preemptive right did not violate the rule against perpetuities because the right was personal to the Barnharts, who were the sellers, and would vest at the latest upon the Barnharts' death. The language of that provision read:

"'Said 5 acres are to be retained by Sellers as a site for a house trailer with the understanding that when Sellers decide to sell or vacate said 5 acres they will first offer it to Purchasers at a price not to exceed $200.00 per acre plus the cost of any permanent improvements to the real estate that have a residual value.'" 235 Kan. at 512.

It is important to note that in *Barnhart*, the court stated: "[A] 'document should be interpreted where feasible to avoid the conclusion that it violates the rule against perpetuities.'" 235 Kan. at 520; see *Singer Company v. Makad, Inc.*, 213 Kan. 725, Syl. ¶ 6, 518 P.2d 493 (1974). In applying this rule, the court interpreted the contract language "'to be retained by Sellers as a site for a house trailer'" meant the burden of the preemptive right was personal to the sellers, and the Barnharts

7

would necessarily "'decide to sell or vacate'" at the time of the last Barnhart who was a party to the contract died. 235 Kan. at 519-20.Clearly with such an interpretation the contract did not violate the rule against perpetuities.

The court went on to distinguish *Barnhart* from *Henderson* because the triggering event in *Henderson* may never happen. But the triggering event in *Barnhart*, that is Lena Barnhart's death, is guaranteed to happen within the perpetuities time period. 235 Kan. at 520-21. Barnhart's life is the "life in being" contemplated by the rule.

Our most recent case, *Gore v. Beren*, 254 Kan. 418, 867 P.2d 330 (1994), involved an agreement which gave cotenants a preemptive right. The question arose whether that preemptive right violated the rule against perpetuities. The language in that contract stated:

> "'The parties hereto further agree that should any party hereto desire to sell all or any part of his interests in either or both of said parcels of land, he shall promptly give written notice to the other cotenants with full and complete information concerning the terms of the proposed sale, and the other cotenants shall then have an option and prior right for a period of twenty (20) days after the receipt of said written notice to purchase the interest of the party desiring to sell said interest on the same terms and conditions which the selling party proposed to sell. . . . Any sale contemplated by this paragraph shall refer to and mean a bona fide sale.'" 254 Kan. at 425.

Once again, the court held the benefit of the right of preemption was personal to those that signed the agreement and did not continue to successor owners. The right "ends when the last signatory dies or divests himself of his interest or otherwise waives the right," which makes the interest vest within the time period of the rule against perpetuities. 254 Kan. at 435.

8

We can see from this clear progression that the court is reluctant to follow the harsh results of *Henderson*. In *Henderson*, the preemption was at a fixed price which directly affected the alienability of the land. By alienability, we mean the ease by which title to land can be transferred to someone other than the owner. In contrast, the contract in *Gore* required a bona fide offer from a third party, so the contract did not affect the land's alienability. Any sale would be at a market price where in *Henderson*, the sale price was fixed forever. Thus, the owners would be reluctant to sell at such a low price. The purpose of the rule against perpetuities is to avoid land being wasted by ancient encumbrances. Land is more valuable if you can sell it. See *Gore*, 254 Kan. at 429.

*Applying these principles, we interpret Trear's contract provision as a personal right.*

Mindful of the admonition of the Supreme Court to interpret documents so that they do not violate the rule against perpetuities, we believe it is feasible to interpret this contract as a personal right granted to Trear to exercise the right of refusal to purchase this real estate. With such an interpretation, that right vests only in Trear and it expires with his death. Thus, the contract satisfies the common-law rule against perpetuities.

The provision making the contract binding on the heirs, legal representatives, and assigns, makes the contract binding upon Chamberlain's heirs, legal representatives, and assigns, *as long as Trear is alive*. The personal right extends to Trear and that is valid until his death. In order to enforce that right, the provision must be binding upon the Chamberlains' heirs, legal representatives, and assigns in case the Chamberlains predecease Trear.

If we interpret this contract provision as the district court did, we would not be following the guidance of our Supreme Court in *Barnhart* and *Gore*. Because our interpretation enforces the language of the contract, we reverse the district court's

9

summary judgment ruling that the right of refusal provision of this contract violated the rule against perpetuities.

*The contract did comply with the statute of frauds.*

A brief review of the statute of frauds is helpful at this point. A right of refusal is an interest in land which is subject to the statute of frauds. *Barnhart*, 235 Kan. at 523-24. The statute of frauds provides:

> "No action shall be brought . . . upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith . . . ." K.S.A. 33-106.

In order for the statute of frauds to be satisfied there must be a writing evidencing a contract. K.S.A. 33-106. One way to satisfy the statute of frauds is to have an oral contract memorialized in writing. See *M West, Inc. v. Oak Park Mall*, 44 Kan. App. 2d 35, 44, 234 P.3d 833 (2010).

> "'A memorandum, in order to be enforceable under the statute of frauds, may be any document or writing, formal or informal, signed by the party to be charged or by his lawfully authorized agent, which states with reasonable certainty (a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, (b) the land or other subject matter to which the contract relates, and (c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made.'[Citation omitted.]" *Barnhart*, 235 Kan. at 524.

10

The Supreme Court of Kansas has stated the statute of frauds only requires the material terms of a contract to be stated with reasonable certainty. *Botkin v. Security State Bank*, 281 Kan. 243, 249-50, 130 P.3d 92 (2006).

Here, the first requirement of the statute of frauds is satisfied. The Chamberlains are the party to be bound, and the Chamberlains signed the contract.

Furthermore, we hold the statute of frauds is also satisfied in this case because the real property can be identified, as the district court so found. Obviously, the right of refusal provision in this contract incorporates the description of the land which was the subject of the 1986 sale to Trear. The property which was the subject of the contract— Trear's land—is adequately described in the contract. Trear's land is surrounded on the north side by a county road and on all other sides by the Chamberlains' land. There is no other land owned by the Chamberlains which could possibly be adjoining Trear's real estate. Thus, the description of the land subject to the right of refusal as adjoining real estate renders the land capable of identification. See *Clark v. Larkin*, 172 Kan. 284, 287, 239 P.2d 970 (1952).

We hold the district court correctly determined the statute of frauds was not violated. Because the party to be bound signed the contract, and the written description of the land rendered it capable of being identified, the statute was satisfied. We affirm that portion of the district court's ruling.

*Trear's right of refusal was not voided*.

The district court also ruled that Trear's right of refusal was not voided by Trear's failure to act upon Chamberlain's first offer of the property to him. We think the district court correctly interpreted the contract to mean that when Chamberlain received an offer

11

on the property, she must extend a chance to Trear to purchase the property at the price that the third party is offered.

A right of refusal is a defined legal term. Under a right of refusal, when a seller forms the intent to sell the property subject to the right an option contract between the seller and the holder of the right is formed. See *Miller v. Alexander*, 13 Kan. App. 2d 543, 552, 775 P.2d 198 (1989). The holder of the right may exercise the option contract and purchase the land, but if the holder does not exercise that right the seller is free to sell the land. See *Anderson v. Armour & Company*, 205 Kan. 801, 804-05, 473 P.2d 84 (1970).

The plain language of this contract states that Trear has a right of refusal. "SELLERS shall extend unto PURCHASER the first right of refusal to purchase . . . ."

When Chamberlain first offered the entire tract of land to Trear for $289,000, there had been no offer from anyone to buy the property. She then turned around and sold most of the property to Jasnoski and Goodell for 1/3 of that price. Trear never had an opportunity to buy the land at that price. Thus, he was denied his right of refusal.

This price discrepancy raises questions concerning the good faith of Chamberlain. The record does not conclusively show if the parties were acting in good faith. This is a question of material fact which also makes it appropriate to deny summary judgment to Chamberlain on this issue.

Affirmed in part, reversed in part, and remanded for further proceedings.

12