The opinion of the court was delivered by Biles, J.:
This is an action for equitable relief stemming from a 1986 real estate contract containing a "first right of refusal" applicable to a separate land tract. Kevin W. Trear seeks specific performance and title to a smaller parcel that was sold after he ignored an earlier offer to sell him the entire tract subject to the 1986 contract. The district court and a Court of Appeals panel differed on how they approached the issues and arrived at conflicting outcomes. We granted review and now affirm the Court of Appeals judgment as right for the wrong reason.
As we view the contract's language, this first right of refusal was fulfilled after Trear failed to respond to the offer to sell him the full tract subject to the contract. We remand to the district court for further proceedings because there remains an unresolved claim as to whether the parties discharged their implied duty of good faith and fair dealing when the offer was presented. Answering this question will determine whether the first right of refusal provision lapsed when Trear failed to respond.
FACTUAL AND PROCEDURAL BACKGROUND
In 1986, Trear purchased real estate in Lyon County from Susan Chamberlain and her now-deceased husband. The sale contract included a preemptive provision for adjoining land Chamberlain and her husband were retaining. The provision stated in relevant part:
"The parties mutually agree that in the event the real estate presently owned by SELLERS which is adjoining the real estate which is the subject of this Contract, *300 is offered for sale by SELLERS, SELLERS shall extend unto PURCHASER the first right of refusal to purchase said adjoining real estate at a price and upon terms mutually agreed upon by the parties. If the parties cannot agree, this right of first refusal shall lapse and thereafter be considered null and void."
The contract further stated it was "binding upon the heirs, legal representatives, and assigns of the parties hereto."
After Chamberlain's husband passed away in 2013, she attempted to sell Trear the 73 adjoining acres covered by the 1986 contract. The tract included the house where Chamberlain and her husband had lived. The sale price was $289,000. The offer's written terms stated it would expire eight days later and further explained, if Trear did not reply, "any obligations [Chamberlain] may or may not have to offer the real estate to [Trear would] be fulfilled." Trear did not respond.
Chamberlain then listed the 73-acre tract with a real estate agency at a $295,000 asking price. In a follow-up letter to Trear, Chamberlain's attorney advised him of the listing and asked him to contact the agent if Trear wished to purchase the property. The letter also expressed the belief that Chamberlain had fulfilled her obligation to offer the property to Trear first. Trear made no offers, counteroffers, or other attempts to negotiate with Chamberlain or otherwise pursue the sale.
The listed property did not sell and was taken off the market. About a year later, Chamberlain sold 64 of those 73 acres to her daughter, Jamie Jasnoski, and Nathan Goodell for $91,124. This sale did not include the house.
Trear sued Chamberlain, Jasnoski, and Goodell, alleging the sale violated his first right of refusal. He sought various equitable remedies, including specific performance permitting him to purchase the 64 acres for the price Jasnoski and Goodell paid.
The district court entered summary judgment for defendants. It decided the first right of refusal clause-when combined with the binding provision on heirs, legal representatives, and assigns-violated the rule against perpetuities and was unenforceable. But the court rejected defendants' alternative arguments that the first right of refusal clause violated the statute of frauds and that Chamberlain had complied with the contract by offering to sell the 73 acres to Trear the year before selling the smaller tract to someone else.
On Chamberlain's claim that the failure to reach mutually agreeable terms in 2013 extinguished her obligation, the district court ruled:
"The 'right of first refusal' is a term of art and allows a party the right to refuse a price offered to another person even though it does not say that in this contract . The court finds that the intent of the parties could not have been to offer it to a party for double or triple the price, then turn around and sell it to another party for much less. The court finds that the 'right of first refusal' means the right to accept an offer that has been agreed to by the seller with someone else, and as such, Ms. Chamberlain's actions did not satisfy provision 6 of the contract." (Emphasis added.)
The district court did not address Trear's argument that Chamberlain failed to satisfy the contract provision because she breached the implied covenant of good faith and fair dealing. It also did not consider defendants' argument that Trear did not exhibit good faith and fair dealing by ignoring the 2013 offer and listing. We presume this is because the ruling on the other issues rendered those questions moot.
Trear appealed from the dispositive rule-against-perpetuities decision. Defendants cross-appealed, arguing they were entitled to judgment on their alternative statute of frauds and contract compliance arguments. A Court of Appeals panel reversed, disagreeing with the district court's rule-against-perpetuities decision. Trear v. Chamberlain , 53 Kan.App.2d 385, 391, 388 P.3d 607 (2017). It also held the first right of refusal clause was enforceable under the statute of frauds and agreed with the district court that defendants were not entitled to judgment on their claim that Chamberlain fully performed under the 1986 contract. 53 Kan.App.2d at 393, 388 P.3d 607.
*301 We granted defendants' petition for review solely on the panel's contractual compliance analysis. The rule against perpetuities and statute of frauds questions are not before us.
Jurisdiction is proper. K.S.A. 20-3018(b) (petition for review of Court of Appeals' decision); K.S.A. 60-2101(b) (providing Supreme Court jurisdiction over cases subject to review under K.S.A. 20-3018 ).
THE FIRST RIGHT OF REFUSAL PROVISION
Defendants argue Chamberlain's 2013 offer to sell the 73-acre tract discharged the contractual obligation she owed Trear under the 1986 agreement. We hold the panel both misread the contract and improperly inserted terms inconsistent with the plain language under consideration.
Standard of Review
Our standard for reviewing a district court's summary judgment ruling is well known:
" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." ' " Armstrong v. Bromley Quarry & Asphalt, Inc. , 305 Kan. 16, 24, 378 P.3d 1090 (2016).
The issue is whether the 1986 contract required Chamberlain to offer Trear the smaller 64-acre tract at the same price that the smaller tract was sold nearly one year later after he ignored her previous efforts to sell him the entire 73-acre tract that included the disputed property. We must interpret the 1986 contract to resolve this matter.
To the extent "material facts are uncontroverted, an appellate court reviews summary judgment de novo." Superior Boiler Works, Inc. v. Kimball , 292 Kan. 885, 890, 259 P.3d 676 (2011) (citing Central Natural Resources v. Davis Operating Co. , 288 Kan. 234, 240, 201 P.3d 680 [2009] ; Troutman v. Curtis , 286 Kan. 452, Syl. ¶ 1, 185 P.3d 930 [2008] ).
"The interpretation and legal effect of written instruments are matters of law over which appellate courts exercise unlimited review, including whether a written instrument is ambiguous." Thoroughbred Assocs. v. Kansas City Royalty Co. , 297 Kan. 1193, 1207, 308 P.3d 1238 (2013). Our review is "unaffected by the lower courts' interpretations or rulings." Born v. Born , 304 Kan. 542, 554, 374 P.3d 624 (2016) (citing Prairie Land Elec. Co-op. v. Kansas Elec. Power Co-op. , 299 Kan. 360, 366, 323 P.3d 1270 [2014] ).
" 'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.' [Citations omitted.] If, on the other hand, the court determines that a written contract's language is ambiguous, extrinsic or parol evidence may be considered to construe it. [Citations omitted.] In addition,
" '[a]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. ... [Citations omitted.]
"... But, if the language of a contract is ambiguous and the intent of the parties cannot be ascertained from undisputed extrinsic or parol evidence, summary declaratory judgment is inappropriate."
*302 Waste Connections of Kansas, Inc. v. Ritchie Corp. , 296 Kan. 943, 963-64, 298 P.3d 250 (2013).
Discussion
It is undisputed that: (1) Chamberlain offered to sell Trear the adjoining real estate covered by the 1986 contract; (2) she made that offer before trying to sell the land to anyone else; (3) Trear took no action; and (4) the parties did not mutually agree on a price or terms after Trear did not respond. Accordingly, our focus is on whether Chamberlain's 2013 overtures to Trear satisfied the contractual language as contemplated so that the first right of refusal lapsed as provided, i.e., "If the parties cannot agree [on price and terms] , this right of first refusal shall lapse and thereafter be considered null and void." (Emphasis added.)
Trear argues he was contractually entitled to an opportunity to purchase the 64 acres under the same terms for which they were sold, citing Anderson v. Armour & Co. , 205 Kan. 801, 805, 473 P.2d 84 (1970). The panel agreed, reasoning:
"A right of refusal is a defined legal term. Under a right of refusal, when a seller forms the intent to sell the property subject to the right an option contract between the seller and the holder of the right is formed. See Miller v. Alexander , 13 Kan.App.2d 543, 552, 775 P.2d 198 (1989). The holder of the right may exercise the option contract and purchase the land, but if the holder does not exercise that right the seller is free to sell the land. See Anderson , [205 Kan. at 804-05, 473 P.2d 84 ]." Trear , 53 Kan.App.2d at 393, 388 P.3d 607.
We have generally described a right of first refusal in similar terms:
"In a right of first refusal situation, each party gives up something in exchange for increased certainty of opportunity to make a deal. The seller gives up its chance to negotiate with the holder of the right of first refusal for a price higher than the one a third party is willing to offer. The holder of the right of first refusal gives up its chance to negotiate with the seller for a price lower than one the seller is willing to accept from a third party . See Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 382-83, 805 N.E.2d 957 (2004) (right holder runs risk that third-party may offer more than holder willing to pay) (citing Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 226 [7th Cir.1996] ). The key to activation of a holder's right of first refusal is mutual willingness to enter into a sale at a specific price satisfactory to both the third party and the seller . The seller may not force a purchase by the holder of the right of first refusal at a higher price. The holder of the right of first refusal may not force a sale to it at a lower price. Room to dicker is effectively circumscribed on both sides of the table by the necessity for price acceptability to the third party . See Miller, 87 F.3d at 226 ; In re Adelphia Communications Corp., 368 B.R. 348, 352-53 (Bankr. S.D.N.Y. 2007) ; Uno Restaurants, Inc., 441 Mass. at 383 [805 N.E.2d 957]. The nature of a right of first refusal agreement means that neither the seller nor the right holder remains free to exercise unfettered business judgment to use the sale of the subject property or other asset to maximize profit or shareholder value. Each has voluntarily constrained such judgment and taken on obligations to the other. See Navasota Resources v. First Source Texas, 249 S.W.3d 526, 537-39 (Tex. App. 2008) (no unreasonable restraint on alienation on holding seller to right of first refusal limits)." (Emphases added.) Waste Connections , 296 Kan. at 968-69, 298 P.3d 250.
But this general description cannot be blind to the express terms of the 1986 contract language, despite use of a "first right of refusal" label.
First, the "key to activation" of Trear's contractual right was Chamberlain's intention to offer the property for sale, not her " ' "specific intention to sell" ' " to a third party. Waste Connections , 296 Kan. at 969, 298 P.3d 250 (under the contract language at issue in that case, "[a] seller must form the ' "specific intention to sell" ' in order for the right of first refusal to ripen into an ' "enforceable contract right" ' or option equivalent").
*303 The 1986 contract provided that when the real estate subject to it "is offered for sale by SELLERS, SELLERS shall extend unto PURCHASER the first right of refusal to purchase said adjoining real estate at a price and upon terms mutually agreed upon by the parties." It is undisputed Chamberlain gave Trear that opportunity before she listed the property with a real estate agent.
Second, the 1986 contract did not require Trear to accept or reject terms Chamberlain may have reached with a third party. To the contrary, the agreement contemplated they would negotiate first with each other in search of mutually satisfactory price and terms. And it is undisputed that satisfactory price and terms were not reached after Trear ignored Chamberlain's overtures and failed to follow up on the later real estate listing. And just as plainly, once the parties failed to reach agreement on both price and terms, the obligation would end because the contract stated: "If the parties cannot agree, this right of first refusal shall lapse and thereafter be considered null and void."
In other words, what Chamberlain and Trear bargained for in 1986 was his first right to negotiate with Chamberlain before any other potential buyers could acquire the property. And that chance was what Trear got. He simply failed to pursue it.
In reaching contrary conclusions, the district court and panel had to imply additional terms into the contract simply based on the phrase "first right of refusal." And they did so without considering the expressed process set out in the contract. The district court concluded that "the 'right of first refusal' means the right to accept an offer that has been agreed to by the seller with somebody else ." (Emphasis added.) As explained, the 1986 contract made no mention of price or terms relative to a third party. Whatever was to happen was between Trear and Chamberlain.
Likewise, the panel concluded "the district court correctly interpreted the contract to mean that when Chamberlain received an offer on the property, she must extend a chance to Trear to purchase the property at the price that the third party is offered ." (Emphasis added.) Trear , 53 Kan.App.2d at 393, 388 P.3d 607. To support this, the panel set out what it described as the accepted legal definition of a right of refusal, then reasoned "[t]he plain language of this contract states that Trear has a right of refusal." 53 Kan.App.2d at 393, 388 P.3d 607. Again, no third-party language was expressed in the contract.
"[A] clearly indicated contrary intent" can deprive words or phrases of their ordinary legal meanings depending on context. Campbell v. McBurney , 201 Kan. 26, 31-32, 439 P.2d 133 (1968) (construing will). Any implicit terms that might be thought to follow from the phrase "first right of refusal" in the lower courts' view obviously conflicted with the explicit language that the obligation to Trear would "lapse and thereafter be considered null and void" when the parties did not agree upon a price and terms among themselves after Chamberlain decided to sell and offered the property first to Trear.
"It is not within the province of a court to reform an instrument by rejecting words of clear and definite meaning and substituting others. [Citation omitted.] When a written instrument is complete, the court will not imply an additional term. [Citation omitted.] Language in a contract is ambiguous only when the words used to express the meaning and intention of the parties are insufficient in that the contract may be understood to reach two or more possible meanings. [Citations omitted.]" Havens v. Safeway Stores , 235 Kan. 226, 231, 678 P.2d 625 (1984) (holding trial court erred disregarding contract language and looking at industry practice to conclude party breached contract).
See also Constellation Development, LLC v. Western Trust Co. , 882 N.W.2d 238, 243 (N.D. 2016) (" 'It is the substance of the agreement that controls, not the titles or labels attached by the parties.' ").
The parties' intent, as expressed in their contract, for something other than what the lower courts implied as a "right of first refusal" is unmistakable. The lower courts erred by imposing a different meaning and accompanying unwritten requirements into this agreement. In effect, what the lower courts *304 did was rewrite the terms beyond the parties' expressed intent that Trear have the first opportunity to negotiate with Chamberlain when she desired to sell the adjoining property.
Trear nonetheless argues his right persisted despite his failure to respond and applied to the 64-acre, land-only tract Chamberlain later sold. He relies on Anderson , 205 Kan. 801, 473 P.2d 84, in which the court held a vendor could not circumvent a preemptive right to purchase by selling a larger tract than that to which the right attached. The Anderson court reasoned that although the contract referenced a smaller tract, "it was [the vendor] who prepared the [contract] and if it was intended that the provision not apply in the event [the vendor] desired to sell more than just that tract ... the clause could have so provided." 205 Kan. at 805, 473 P.2d 84. But Anderson is distinguishable on its facts because the 2013 offer included all the property in the sale Trear now challenges, not the other way around as in Anderson .
Trear undisputedly had the opportunity to negotiate with Chamberlain to purchase the real estate subject to the contract upon mutually acceptable price and terms when she approached him in 2013. Had he been interested in the smaller 64-acre tract, nothing prevented him from trying to negotiate that with Chamberlain as part of the "terms [to be] mutually agreed upon by the parties," as stated in their agreement when Chamberlain first offered him the entire tract. But Trear ignored Chamberlain's offer entirely, as well as the subsequent invitation from Chamberlain's attorney to contact the listing agent if interested in the property. Under these facts, Trear's right would lapse under the express terms in the 1983 agreement-unless there is something to his good faith and fair dealing claim discussed below.
We hold the panel erred when it concluded the contract required Chamberlain to extend to Trear the same terms she reached with Jasnoski and Goodell. The contract language simply does not support the panel's holding. But we affirm the panel's outcome because it was right for the wrong reason. See Atkins v. Webcon , 308 Kan. 92, 419 P.3d 1, 8 (2018).
Finally, we consider defendants' request that if we agree with their contract interpretation, we should direct the district court to enter judgment in their favor. This we cannot do because an issue remains over Trear's claim that Chamberlain violated the implied covenant of good faith and fair dealing embedded in any contract. See Waste Connections , 296 Kan. at 973, 298 P.3d 250 ; Trear , 53 Kan.App.2d at 393, 388 P.3d 607 (noting price discrepancy between offer and sale price raised questions concerning Chamberlain's good faith).
At summary judgment, Trear appeared to argue Chamberlain breached this implied duty solely based on the difference between the asking price in her 2013 offer and the price Jasnoski and Goodell eventually paid for the smaller tract without the house. Admittedly, this seems like a stretch given that Trear made no effort to negotiate with Chamberlain over price or terms after she contacted him. In other words, there would seemingly need to be a little back and forth between the parties upon which to base a lack of good faith claim and the facts indicate there was none because Trear did nothing to respond to Chamberlain's offer.
The district court's factual findings on summary judgment noted only that Trear complained in his petition that Chamberlain's offer was "artificially high," but the court then went on to find that neither "prior to filing the suit, nor after the offer to sell was extended to him, [Trear] did not appraise the house and approximately 70 acres." It is impossible to make anything of this finding on appeal, so it needs to be sorted out by the district court. See Supreme Court Rule 8.03(h) (2018 Kan. S. Ct. R. 56) (providing in civil cases Supreme Court may consider issues "presented to the Court of Appeals and that the parties have preserved for review").
To be sure, Kansas recognizes a duty of good faith and fair dealing is embedded in every contract except those for employment-at-will. Waste Connections , 296 Kan. at 965, 298 P.3d 250.
" ' "Every contract implies good faith and fair dealing between the parties to it, and a duty of co-operation on the part of both parties. ... [T]here is an implied *305 undertaking in every contract on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out his part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Ordinarily if one exacts a promise from another to perform an act, the law implies a counterpromise against arbitrary or unreasonable conduct on the part of the promisee. However, essential terms of a contract on which the minds of the parties have not met cannot be supplied by the implication of good faith and fair dealing." [Citations omitted.]' " 296 Kan. at 965, 298 P.3d 250.
For their part, defendants claimed they were entitled to summary judgment based on Trear's lack of good faith they perceive in his failing to negotiate at all with Chamberlain. But whether either party's good faith claim is susceptible to legal effect on summary judgment must be decided by the district court. See Estate of Draper v. Bank of America, N.A. , 288 Kan. 510, 528, 205 P.3d 698 (2009) ("While good faith ... [is] usually [a question] of fact, summary judgment may be appropriate if the facts are uncontroverted and establish that a defined standard has not been met.").
The Court of Appeals' judgment reversing the district court is affirmed, although under a different rationale than the one employed by the panel. The case is remanded to the district court for further proceedings.